**In re Michael FRAIN and Patricia Frain, Debtors.**

**Patrick F. O'SHEA and Roger L. Schoenfeld, Plaintiffs,**

**v.**

**Michael FRAIN, Defendant.**

**Bankruptcy No. 97 B 18991.**
**Adversary No. 97 A 01126.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 28, 1998.

Frederic R. Klein, Deborah Rzasnicki Hogan, Goldberg Kohn Bell Black Rosenberg & Moritz, Chicago, IL, for Plaintiffs.

William F. White, White & White, Downers Grove, IL, for Defendant.

## POST–TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary case relates to the bankruptcy petition filed by Debtor–Defendant Michael Frain under Chapter 7 of the Bankruptcy Code, Title 11 U.S.C. Following trial, final argument was submitted by the parties in writing. Based on the evidence, the Court now makes and enters the following Findings of Fact and Conclusions of Law. Pursuant thereto, judgment will separately enter in favor of Defendant.

### FINDINGS OF FACT

Michael Frain ("Debtor" or "Frain") was a 50 percent shareholder in Preferred Land Title Insurance Company ("Preferred Land") as well as the chief operating officer and one of the directors. Patrick O'Shea ("O'Shea") and Roger Schoenfeld ("Schoenfeld") (collectively "Plaintiffs") each held 25 percent of the outstanding shares and were also members of the three-member board of directors.

Pursuant to a shareholder agreement and beginning May 1, 1989, Frain was to be paid a specific salary adjusted each year to compensate for inflation. The shareholder agreement provided in pertinent part:

Frain shall be chief operating officer of the corporation. Frain shall work for the Corporation on such basis for a period of three (3) years commencing May 1, 1989 (the "Employment Term") and will be paid an annual salary during the Employment Term of $70,000 adjusted for inflation effective as of May 1 of each year of the Employment Term based upon the increase in the Consumer Price Index for the metropolitan Chicago area (the "CPI") during the immediately preceding twelve (12) month period.

Plaintiffs' Ex. A. This salary provision in the shareholder agreement expired in 1992. The shareholder agreement contained an additional provision which provided: "No salaries, bonuses or other compensation shall be paid to a shareholder or his spouse, siblings children or Affiliates whether as an employee, consultant, agent, contractor or otherwise unless set forth herein or approved by a unanimous vote of the Board of Directors." *Id.*

At the end of his three-year Employment Term, Frain continued in his role as chief operating officer of Preferred Land. Not only did he then continue to pay himself a salary, but he increased his salary by an amount in excess of the amount proscribed by the Consumer Price Index. Although Plaintiffs were not then aware of Frain's increased salary, they were aware that he was continuing to work and that he was paying himself a salary.

The shareholder agreement also provided for a priority in distributions of corporate cash flow. After payment of all corporate debts and obligations and after reserving necessary amounts for capital investment and working capital, distributions were to be made:

(A) First, for so long as the Corporation is a Subchapter S Corporation, to the Shareholders an amount reasonably determined by the Board of Directors to permit the Shareholders to pay all Federal and State income taxes due with respect to the preceding calendar year as a result of their ownership of Shares in the Corporation . . . ;

(B) Second, to the payment of any outstanding Shareholder Loans (including all principal and accrued interest); and

(C) Third, the balance, if any, to the Shareholders in proportion to their ownership of Shares.

Plaintiffs' Exhibit A. However, Frain made distributions to shareholders without regard

to that agreed order of distribution. Most particularly, he did not repay shareholder loans due to Plaintiffs prior to making shareholder distributions to them and himself. Although Plaintiffs protested, they accepted and deposited their portions of the shareholder distributions.

In addition to the preceding provisions on salary, the shareholder agreement gave Plaintiffs the right to purchase Frain's interest for $1.00 in the event Frain committed, among other things, misappropriation of funds or property of the corporation or any material breach of any other provision of the shareholder agreement which remains uncured after thirty days' written notice of the breach.

Plaintiffs brought this Adversary case arguing that Frain's actions in taking increased salary and making of the shareholder distributions not only breached the shareholder agreement but were a breach of his fiduciary duty to them. As such, Plaintiffs assert that the debt to them which arose from Frain's actions should be held nondischargeable under 11 U.S.C. § 523(a)(4) due to his asserted fraud or defalcation while acting in a fiduciary capacity.

Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

#### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

#### Discussion

■ Section 523(a)(4) provides that a discharge "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4). The first requirement for application of this provision is that a "fiduciary" relationship exist. Be-

cause the evidence showed no such relationship, other issues presented in the case need not be reached.

Under Illinois law, a number of relationships can constitute fiduciary relationships: attorney and client, *Matter of Marchiando*, 13 F.3d 1111, 1115 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); joint venturers or partners, *Matter of Woldman*, 92 F.3d 546, 547 (7th Cir. 1996); corporate directors and shareholders, *Marchiando*, 13 F.3d at 1115; and of course trustee and beneficiary under an express trust. *Id.*

■ There was no express trust relationship between the parties to this action. "Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose; and (6) delivery of trust property to the trustee." *Matter of Marchiando*, 142 B.R. 246, 249–50 (N.D.Ill.1992), *aff'd*, 13 F.3d 1111 (7th Cir.), *cert. denied; Illinois Dept. of the Lottery v. Marchiando*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994) (collecting cases). All of the above elements are required or no express trust exists. *Id.*

In this case, there was no intent to create a trust, no specifications of a trust purpose, and no delivery of trust property to the trustee. Therefore, no express trust existed.

■ While fiduciary relationships may arise outside of express trusts, the mere existence of a state law fiduciary relationship may not be sufficient to deny discharge under § 523(a)(4). *Woldman*, 92 F.3d at 547. "[O]nly a subset of fiduciary obligations is encompassed by the word 'fiduciary' in section 523(a)(4)." *Id.* "The broad general definition of 'fiduciary' is inapplicable in the dischargeability context." *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir.1996) (citing *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986)).

■ It has been held in this Circuit that there is a distinction between a trust or other fiduciary relationship that has "an existence independent of the debtor's wrong and a trust or other fiduciary relation that has no

existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty. While in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." *Marchiando*, 13 F.3d at 1115–16; *see also, In re Short*, 818 F.2d 693, 695 (9th Cir.1987); *Matter of Bennett*, 970 F.2d 138, 143 (5th Cir.1992). Constructive, resulting, and implied trusts do not fall within the confines of § 523(a)(4). *Marchiando*, 13 F.3d at 1115.

The real distinction, the Seventh Circuit has suggested in *Marchiando*, is that fiduciary relations that impose actual duties in advance of the breach generally involve a difference in knowledge or power between the fiduciary and principal. As a result, the fiduciary holds a position of ascendancy over the principal. *Marchiando*, 13 F.3d at 1116 (citing *Maksym v. Loesch*, 937 F.2d 1237, 1242 (7th Cir.1991)).

> The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between a director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arms length between equals.

*Marchiando*, 13 F.3d at 1116. The opinion noted that most cases holding debts nondischargeable under § 523(a)(4) either involve fiduciary relations between nonequals or express trusts. *Id.; Woldman*, 92 F.3d at 547.

As stated, Frain was a 50 percent shareholder in the corporation while O'Shea and Schoenfeld each held 25 percent. Frain was also the chief operating officer. However, all parties to this case were members of the three-person board of directors. Moreover, Plaintiffs had the contractual right to buy Frain's stock. Plaintiffs argue that they should not be penalized for failing to exercise that right because they "believed it was in the best interests of all three shareholders and the corporation if they continued to allow Frain to pursue a sale of the corporation." Plaintiffs' Reply at 5. Whatever Plaintiffs' motivations for choosing not to exercise their right to buy Frain out, they still possessed that right.

In 1992, when the salary specifications in the shareholder agreement expired, Frain began to pay himself salaries and bonuses at levels higher than contemplated by the shareholder agreement without agreement by the Plaintiffs.

However, Plaintiffs were parties to the shareholder agreement. They were aware that Frain's salary provisions were only in effect until 1992. They were also aware that he was continuing to draw a salary. Arguably a salary at any amount after May 1992 violated the terms of the shareholder agreement since Plaintiffs had not agreed to any salary after the "Employment Term" expired. Moreover, by the summer of 1994, Plaintiffs knew that Frain had given himself an increase in salary. Frain also made distributions to all three shareholders from the corporate cash flow prior to his first paying the Plaintiffs' debts due them through their shareholder loans, as the shareholders had contractually agreed. Plaintiffs received and either cashed or deposited their own shareholder distributions, and certainly knew Frain was making them.

Although Frain was the chief operating officer and largest single shareholder of the corporation, this is not a case of a large corporation where a controlling shareholder froze out the minority. Nor is this a case where a corporate officer hid his fraudulent actions from shareholders or other board members. Rather, this case only involves three shareholders of a closely held small corporation. Although Frain held the largest block of shares, he was not authorized to take action without the vote of O'Shea or Schoenfeld, and for some actions he needed the votes of both Plaintiffs.

All parties to this case were shareholders and also members of the board of directors.

Frain's actions were not hidden. He made shareholder distributions to all three shareholders. He did not forge checks or change the names of payees to cover his tracks. This is not a case of inequality in the relationship. The mere fact that Frain performed much of the day-to-day corporate functions is insufficient to establish that the relationship between the shareholders and board members was anything but equal.

Plaintiffs cite to *In re Volpert,* 175 B.R. 247 (Bankr.N.D.Ill.1994), as support for their position that Debtor was acting in a fiduciary capacity. However, as pointed out in that opinion,

> [t]o establish fraud or defalcation under § 523(a)(4), a plaintiff must show: (1) existence of an express trust or fiduciary relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs....

*Volpert,* 175 B.R. at 259 (citing *Marchiando,* 13 F.3d at 1116). The *Volpert* opinion did acknowledge dictum in *Marchiando* (which had not involved corporate relationships), suggesting that a corporate director may owe a fiduciary duty to shareholders within the meaning of 11 U.S.C. § 523(a)(4) solely by status of office. *Id.* at 260 (citing Marchiando, 13 F.3d at 1115–16). However, the ruling was only that pleading such would be enough to withstand a motion to dismiss (had other elements been pleaded) under federal notice pleading standards.

Here trial has been held and Plaintiffs' evidence was inadequate for reasons described earlier. *Id.* at 260.

## CONCLUSION

Plaintiffs have failed to prove that Frain acted in a fiduciary capacity. As a result, the Frain's asserted debt to Plaintiffs, if it be owing, cannot be held nondischargeable under 11 U.S.C. § 523(a)(4). By separate order, judgment will enter for Defendant.