**In re Roger LeROY, Debtor.**

**The Law Firm of Wendy R. Morgan, Plaintiff,**

v.

**Roger LeRoy, Defendant.**

**Bankruptcy No. 99 B 06502.
Adversary No. 99 A 00768.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 13, 2000.

494

Wendy R. Morgan, Arlington Heights, IL, for plaintiff.

Roger LeRoy, pro se.

David R. Brown, Roselle, IL, trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the complaints filed by The Law Firm of Wendy R. Morgan (the "Law Firm") against the Debtor, Roger LeRoy (the "Debtor"), to determine the dischargeability of a debt he owes the Law Firm under 11 U.S.C. § 523(a)(4), (a)(5) and (a)(15). For the reasons set forth herein, the Court finds the debt dischargeable.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Many of the facts are undisputed. On June 14, 1994, the Circuit Court of the Eighteenth Judicial Circuit of DuPage County, Illinois (the "State Court") entered a Judgment of Dissolution of Mar-

riage (the "Judgment") between the Debtor and his former spouse, Terri J. Robson–LeRoy. *See* Law Firm's Exhibit No. 1.

Under the Judgment, the Debtor's former spouse was awarded a financial interest in the Debtor's law partnership capital account. Pursuant to the Judgment, the Debtor was to pay his former spouse the sum of $20,535.50 which was to accrue interest at the rate of 5% per annum from the date of the entry of the Judgment. *Id.* at ¶ 20, p. 10. The payment was to be made in two installments, the first being payable on the fourth anniversary of the entry of the Judgment and was to be in the amount of 50% of the total sum due, and the balance was due on the fifth anniversary of the entry of the Judgment. *Id.* The Judgment further provided that "[t]hese two payments shall be considered a deferred distribution of marital assets and not a support or maintenance obligation and shall be treated as such for tax purposes." *Id.* This obligation was to become due in full immediately upon the death of the Debtor or upon his cessation as a partner in his law firm. *Id.*

The Law Firm represented the Debtor's former spouse in the dissolution of marriage proceeding. As a result of representing the Debtor's former spouse, the Law Firm spent considerable time and incurred many costs. Subsequent to the entry of the Judgment, the Law Firm was granted leave to file a petition for attorney's fees pursuant to 750 ILCS 5/508 under the Illinois Marriage and Dissolution of Marriage Act.

The Debtor's former spouse subsequently assigned her right under Paragraph 20 of the Judgment to the Law Firm, to receive the payments from the Debtor, in payment of the attorney's fees she incurred during the marital dissolution proceeding (hereinafter referred to as the "Assignment"). On April 3, 1995, the State Court entered an Amended Agreed Order (the "April 3rd Agreed Order") which was incorporated into the Judgment and embodied that Assignment. *See* Law Firm Exhibit No. 2. The April 3rd Agreed Order provided that the Debtor's former spouse "agrees and hereby assigns her Judgment ordered allocated interest in [the Debtor's] Law Partnership, which principle [sic] amount is in the sum of $22,610.00 ... and which began accruing interest at the rate of 5% per annum as of the date of entry of the original Judgment...." *Id.* at ¶ 1. The April 3rd Agreed Order was signed by the Debtor's former spouse and the Law Firm, and constituted a complete transfer and assignment of all rights of the Debtor's former spouse with respect to her allocated interest in the Debtor's law partnership to the Law Firm. *Id.* at ¶ 3. Pursuant to this Assignment, the Debtor was to pay the above principal amount and all accrued interest due and owing his former spouse, directly to the Law Firm. *Id.* at ¶ 4. Finally, the April 3rd Agreed Order provided that "in consideration of the above and based upon full payment of all principal and interest as set forth above to [the Law Firm] the above [sic] the Petition for Attorney's Fees with respect to all remaining fees due and owing by [the Debtor's former spouse] to [the Law Firm] is hereby dismissed with prejudice." *Id.* at ¶ 5.

The Debtor has been a licensed attorney for approximately twenty years. He was involuntarily terminated from his law partnership on March 31, 1997. *See* Law Firm's Exhibit No. 20 and Debtor's Group Exhibit D. It was determined that his undistributed income, or capital account, as of March 31, 1997, was approximately $72,000.00. *See* Debtor's Group Exhibit D. After the $20,000.00 advanced in June 1997, the Debtor received a final payment of his capital account in the sum of $52,364.58 in August 1997. *Id.*

During the period April 1, 1997 through December 1, 1997, the Debtor made payments on federal and state income tax liabilities in the sum of $26,074.71 and child support and maintenance in the amount of $17,635.50. *See* Debtor's Exhibits L and I. The Debtor's 1997 income as

an attorney, subsequent to his expulsion from the law partnership, was $3,887.50. *See* Debtor's Group Exhibits A and B and Law Firm's Exhibit No. 13. In 1998, the Debtor's income was $38,303.00, and in 1999 his income was $53,971.33. *See* Debtor's Group Exhibits A and B and Law Firm Exhibit Nos. 14 and 15. The Debtor testified that in his twenty years of practice his income exceeded $100,000.00 in only four of those years. Those years— 1991, 1992, 1993 and 1996—were while he was a partner in his former law firm. *See also* Law Firm's Exhibit Nos. 8, 9 and 12. The Debtor further testified that his 1991, 1992 and 1993 higher income resulted from a change in the billing practices of his former law partnership. The Debtor also testified that in 1996 he recovered a $1,500,000.00 fee for his former law partnership in a wrongful death action. The Debtor's earned income for 1996 was $140,595.00, of which $132,500.00 was derived from the fee in this wrongful death cause of action. *See* Law Firm's Exhibit No. 12.

The Debtor testified that his current indebtedness to the Internal Revenue Service for back income taxes, interest and penalties exceeds $27,000.00 and he owes approximately $2,000.00 to the Illinois Department of Revenue. *See* Debtor's Group Exhibit C. Pursuant to the Judgment, the Debtor's current child support obligations total $14,964.00 annually. The Debtor's current living expenses exceed his current income. *See* Debtor's Exhibit K.

In September 1998, the Law Firm commenced proceedings to enforce the Assignment. *See* Law Firm's Exhibit Nos. 3–6. The Debtor made payments to the Law Firm in partial satisfaction of the debt in the sum of $2,000.00. *See* Debtor's Exhibit H.

On March 1, 1999, the Debtor filed a Chapter 7 bankruptcy petition. Thereafter, on May 11, 1999, the Law Firm filed the first adversary proceeding (99 A 00655) against the Debtor. In the complaint, the Law Firm contends that the Debtor's obligation to pay the attorney's fees in the sum of $20,535.00, plus interest at the rate of 5% per annum, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) because those fees were incurred by the Law Firm on behalf of the Debtor's former spouse in the dissolution proceeding for obtaining support and maintenance. The Law Firm seeks $24,673.90 which includes the 5% interest per annum through June 1999.

On June 14, 1999, the Law Firm filed a second adversary proceeding (99 A 00768) against the Debtor. The Law Firm contends that the at the time of the entry of the Judgment and the April 3rd Agreed Order, the Debtor had a capital account with his former law partnership by which he was owed undistributed income from the partnership. Under the Judgment, a portion of that sum was awarded to his former spouse who, in turn, assigned same to the Law Firm pursuant to the April 3rd Agreed Order. The Law Firm alleges that the Debtor improperly and willfully took these funds and converted them to his own use and failed to pay them to the Law Firm. The Law Firm contends that the Debtor's alleged improper conversion of these funds violates 11 U.S.C. § 523(a)(4) and as such, the debt should be found non-dischargeable.

Additionally, the Law Firm contends in the complaint that the debt is non-dischargeable under 11 U.S.C. § 523(a)(15). The Law Firm maintains that the debt was incurred in the course of a divorce or legal separation and that the Debtor has the ability to pay such debt from his income or property not reasonably necessary to be expended for the maintenance or support of the Debtor or a dependent of the Debtor. Further, the Law Firm alleges that the discharge of such debt would result in a benefit to the Debtor that outweighs the detrimental consequences to the Debtor's former spouse, in that the Law Firm will pursue her for the collection of its fees and costs awarded by the State Court in connection with the marital dissolution pro-

ceeding. The Debtor denies that the Law Firm is entitled to recover against him on any of the theories alleged and that the debt is dischargeable under the provisions sued on by the Law Firm.

## III. *THE DISCHARGEABILITY STANDARDS IN THE SEVENTH CIRCUIT*

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Reines*, 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999). "The policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement." *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998) (citation omitted). The § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions. *Id.* at 882.

## IV. *DISCUSSION*

### A. *11 U.S.C. § 523(a)(4)*

The Law Firm argues that the Debtor improperly and willfully converted partnership funds which should have been utilized to pay the Law Firm pursuant to the April 3rd Agreed Order. The Law Firm contends that the Debtor's actions constitute fraud or defalcation while acting in a fiduciary capacity. The Law Firm maintains that the Debtor's use of the partnership funds for his living expenses constitutes dissipation of assets.

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In order for the Law Firm to prevail under § 523(a)(4), it must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. In its written closing argument, the Law Firm does not contend that the Debtor committed embezzlement or larceny. Thus, the Court will not address those components.

To establish that a debt is nondischargeable for reasons of fraud or defalcation while acting in a fiduciary capacity, the Law Firm must establish, by a preponderance of the evidence, the existence of an express trust or fiduciary relation, and a debt caused by the Debtor's fraud or defalcation while acting as a fiduciary. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *In re Woldman*, 92 F.3d 546, 547 (7th Cir.1996). A threshold inquiry is whether a fiduciary obligation runs from the Debtor to either his former spouse, or the Law Firm as her assignee under the facts of this matter. Whether a debtor was acting in a fiduciary capacity for purposes of § 523(a)(4) is a question of federal law. *In re Bennett*, 989 F.2d 779, 784 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993).

The first requirement for application of § 523(a)(4) is that a "fiduciary" relationship exists. *O'Shea v. Frain (In re Frain)*, 222 B.R. 835, 837 (Bankr.N.D.Ill. 1998), *aff'd*, 1999 WL 1269352 (N.D.Ill. Dec. 22, 1999). To qualify under § 523(a)(4), a fiduciary relation must have

an existence independent of a debtor's wrongdoing. *In re Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied*, 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). The hallmark of such a relationship is a:

> difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter. The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary.... These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Id.* at 1116 (citations omitted). Under Illinois law, a number of relationships can constitute fiduciary relationships: attorney and client, *Marchiando*, 13 F.3d at 1115; joint venturers or partners, *Woldman*, 92 F.3d at 547; corporate directors and shareholders, *Marchiando*, 13 F.3d at 1115; and trustee and beneficiary under an express trust. *Id.*

▮▮▮▮ Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose; and (6) delivery of trust property to the trustee. *Frain*, 222 B.R. at 837 (quotation and citations omitted). While fiduciary relationships may arise outside of express trusts, the mere existence of a state law fiduciary relationship may not be sufficient to except from discharge under § 523(a)(4). *Woldman*, 92 F.3d at 547. "[O]nly a subset of fiduciary obligations is encompassed by the word 'fiduciary' in section 523(a)(4)." *Id.* (citation omitted). The Seventh Circuit has made a distinction between a trust or other fiduciary relationship that has "an existence independent of the debtor's wrong and a trust or other fiduciary relation that

has no existence before the wrong is committed. A lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." *Marchiando*, 13 F.3d at 1115–16. Constructive, resulting and implied trusts do not fall within the confines of § 523(a)(4). *Id.* at 1115. The real distinction is that fiduciary relations that impose actual duties in advance of the breach generally involve a difference in knowledge or power between the fiduciary and principal. As a result, the fiduciary holds a position of ascendancy over the principal. *Id.* at 1116 (citation omitted).

▮▮▮▮ Establishing fraud under § 523(a)(4) requires a showing of a positive intentional act involving moral turpitude; constructive fraud is insufficient. *Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 500 (Bankr.N.D.N.Y.1989). There is no hard and fast definition of "defalcation," the alternative proscribed conduct under § 523(a)(4). The Seventh Circuit, however, has adopted the position, like the Fifth and Sixth Circuits, that mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–85 (7th Cir. 1994) (construing "defalcation" under § 523(a)(11)); *In re Johnson*, 691 F.2d 249, 255–57 (6th Cir.1982); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 375–76 (5th Cir. 1980). The Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the bankruptcy context; it has only required something more than a negligent breach of a fiduciary duty. *Meyer*, 36 F.3d at 1385. This is something less culpable than intentional fraud. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr.N.D.Ill. 1996) (citation omitted). An objective

standard is used to determine a defalcation, and intent or bad faith is not a requirement. *See Green v. Pawlinski (In re Pawlinski),* 170 B.R. 380, 389 (Bankr. N.D.Ill.1994) (citations omitted).

The Court finds that the Law Firm has not established that a fiduciary relationship existed between the Law Firm or the Debtor's former spouse, on the one hand, and the Debtor, on the other, vis à vis his interest in his capital account at his former law partnership and the portion thereof he was obligated to pay his former spouse under the Judgment. The Debtor received a payment of $52,364.58 on August 4, 1997 as a result of his expulsion from his law firm partnership on March 31, 1997. *See* Debtor's Group Exhibit D. It is undisputed that the Debtor used the funds to pay other creditors, including approximately $23,000.00 to the Internal Revenue Service and approximately $1,750.00 to the Illinois Department of Revenue for tax year 1996. There was no more than a debtor/creditor relationship between the Debtor and the Law Firm pursuant to the April 3rd Agreed Order.

Moreover, the Court finds that neither an express nor a technical trust existed for purposes of § 523(a)(4) between the Debtor and the Law Firm. That the Debtor failed to use these funds to pay the Law Firm does not constitute fraud or defalcation while acting in a fiduciary capacity. The funds were not the property of the Law Firm. Neither the Debtor's former spouse nor the Law Firm was granted a security interest or lien by the Debtor in his capital account. The Judgment expressly noted that the Debtor had no ability to encumber same. *See* Law Firm's Exhibit No. 1 at ¶ I, p. 3. Rather, they were the Debtor's payments from his former law partnership for the value of his capital account. Further, that these funds were utilized for the Debtor's living expenses and payment to other creditors rather than the Law Firm, and may be considered dissipation of assets in the marital dissolution proceeding, does not,

ipso facto, mean that such actions constitute fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4). The Debtor's conduct in not paying the Law Firm the remaining balance owed under the Judgment and Assignment is a clear breach of his contractual duties, but this is not fiduciary fraud or defalcation. Consequently, the Court finds that the debt is dischargeable under § 523(a)(4).

### B. *11 U.S.C. § 523(a)(5)*

The Law Firm further contends that the Debtor's obligation to pay the unpaid balance owed it is not dischargeable under § 523(a)(5). Section 523(a)(5) provides in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement. . . .

11 U.S.C. § 523(a)(5).

A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is non-dischargeable in bankruptcy under § 523(a)(5). *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982); *Maitlen v. Maitlen (In re Maitlen),* 658 F.2d 466, 468 (7th Cir.1981); *Bradaric v. Bradaric (In re Bradaric),* 142 B.R. 267, 269 (Bankr. N.D.Ill.1992). Obligations that arise as part of the division of marital property, however, are dischargeable under that section. *Coil,* 680 F.2d at 1171. "An award of maintenance and support is meant to provide an ex-spouse with necessary goods or services which he or she would otherwise not be able to purchase." *Calisoff v.*

*Calisoff (In re Calisoff)*, 92 B.R. 346, 352 (Bankr.N.D.Ill.1988) (citation omitted).

■■■ Section 523(a)(5) sets out three requirements that must be met in order for a debt to be non-dischargeable: (1) the underlying debt must be in the nature of alimony, maintenance, or support; (2) the debt must be owed to a former spouse or child; and (3) the debt must be incurred in connection with a separation agreement, divorce, or property settlement agreement or other order of a court of record. *Reines*, 142 F.3d at 972 (citing *Kinnally v. Fonnemann (In re Fonnemann)*, 128 B.R. 214, 217 (Bankr.N.D.Ill.1991)); *Wawak v. Smolenski (In re Smolenski)*, 210 B.R. 780, 782 (Bankr.N.D.Ill.1997). The Law Firm bears the burden of proving these elements by a preponderance of the evidence. *Crosswhite*, 148 F.3d at 881; *Reines*, 142 F.3d at 973.

■■■ Only the first of these three elements is in dispute. With respect to the second element-that the debt must be owed to a former spouse or child-the Seventh Circuit has held "awards of attorneys' fees for services in obtaining support orders have been held non-dischargeable even though the attorney is neither a spouse, a former spouse, nor a child of the debtor." *In re Rios*, 901 F.2d 71, 72 (7th Cir.1990) (citations omitted). The Court finds that the second element has been satisfied because the Judgment awarded the Debtor's former spouse a portion of the capital account, which she then assigned under the April 3rd Agreed Order to the Law Firm. It is uncontested that the basis upon which the Law Firm relies to collect its claim was entered pursuant to the Judgment, as modified by the April 3rd Agreed Order, which is an order of the State Court in connection with the dissolution proceeding, so the third element is not disputed.

■■■ The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law.

*Haas v. Haas (In re Haas)*, 129 B.R. 531, 536 (Bankr.N.D.Ill.1989); *Seidel v. Seidel (In re Seidel)*, 48 B.R. 371, 373 (Bankr. C.D.Ill.1984). In making this determination, the Court must look to the substance of the obligation and not to labels imposed by state law. *See Maitlen*, 658 F.2d at 468; *Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill)*, 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). This is not to say, however, that state law is irrelevant. On the contrary, state law may in fact provide relevant guidance. *See Calisoff*, 92 B.R. at 352. Thus, "it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance." *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977) (citations omitted).

■■■ In determining whether a debt is in the nature of support or maintenance or whether it is properly characterized as a division of property, courts have considered the following factors:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

(4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

(5) the placement of the obligation in the decree (obligations under the heading support indicate the obligation was for support);

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support);

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and

(10) waivers of maintenance.

*See Woods,* 561 F.2d at 29–30; *Maitlen,* 658 F.2d at 468–69; *Coil* 680 F.2d at 1172; *Sterna v. Paneras (In re Paneras),* 195 B.R. 395, 401–02 (Bankr.N.D.Ill.1996); *Wright v. Wright (In re Wright),* 184 B.R. 318, 321 (Bankr.N.D.Ill.1995); *Daulton v. Daulton (In re Daulton),* 139 B.R. 708, 710 (Bankr.C.D.Ill.1992). The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *Wright,* 184 B.R. at 321; *Elkhatib v. Elkhatib (In re Elkhatib),* 108 B.R. 650, 652 (Bankr.N.D.Ill.1989). The underlying question in this determination is whether the State Court and the parties intended to provide support or to divide marital property and debts. *See Paneras,* 195 B.R. at 401. "The effect and the function of the obligation is also an important criterion." *Id.*

All of the foregoing *Woods* factors have been considered. These factors apply in favor of a determination that the debt assigned to the Law Firm from the former spouse was intended not in the nature of alimony or support for the former spouse, but was rather part of the property settlement between the Debtor and his former spouse. Most important is the clear and cogent language in the Judgment which unequivocally states that the payment of the funds to the former spouse "shall be considered a *deferred distribution of marital assets and not a support or maintenance obligation* and shall be treated as such for tax purposes." *See* Law Firm's Exhibit No. 1, at ¶ 20 (emphasis supplied). Thus, the Judgment indicates that the obligation is property settlement and not support or maintenance. The Judgment further states that the "obligation shall be accelerated and become due in full immediately upon the [Debtor's] death or should he cease to be a partner in the law firm of Taylor, Miller, Sprowl, Hoffnagle, & Merletti." *Id.* The Judgment makes the obligation payable to his former spouse in two installments. *Id.*

The Court is unable to determine from reviewing the Judgment whether the award to the former spouse was entered in order to balance the incomes of the Debtor and the former spouse. From the limited record at trial, the Court can ascertain that there was a substantial differential in net income between the Debtor and his former spouse at the time of the dissolution. The Judgment states that the Debtor's former spouse's gross income was $11,075.09 with an additional amount of approximately $1,000.00 per annum from her business. *Id.* at ¶ K, p. 3. The Judgment further provided that the Debtor receive semimonthly draws from his law firm in the amount of $1,782.00 and receive additional draws January 15, April 15, June 15, and September 15 of each calendar year. *Id.* at ¶ J, p. 3. These amounts varied based on funds available to the firm and the tax liabilities of the partners. *Id.* There are no headings in the Judgment indicating whether the State Court intended the award to be either support or property division. There is separate mention in the Judgment concerning support and other payments for the two minor children, as well as rehabilitative maintenance for three years for the former spouse. *Id.* at ¶ 8, p. 7 and ¶ 10, p. 8. The Judgment does state that the obligation shall be treated as a deferred distribution of marital assets for tax purposes. *Id.* at ¶ 20. Finally, the former spouse did not waive her entitlement to maintenance. Conse-

quently, the Court finds that the obligation is in the nature of property division. Thus, the debt is dischargeable under § 523(a)(5).

### C.  *11 U.S.C. § 523(a)(15)*

Alternatively, the Law Firm argues that the debt owed by the Debtor to it is non-dischargeable under 11 U.S.C. § 523(a)(15) which provides that:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

■ In order to except the debt from discharge under § 523(a)(15), the former spouse must establish that she holds a claim against the Debtor, other than the kind described in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *Crosswhite*, 148 F.3d at 884. That has been done in this matter. As discussed above, the Court finds the obligation to pay the

debt assigned to the Law Firm is not in the nature of support, alimony or maintenance. The Judgment specifically provides that it is considered a deferred distribution of marital assets and not a support or maintenance obligation. *See* Law Firm's Exhibit No. 1 at ¶ 20.

■ Once the Law Firm demonstrated this, the burden of coming forward shifts to the Debtor to show either (1) that he lacks the ability to pay the debt from income or property not needed to support himself and any dependents, or (2) that the discharge of this debt would be more beneficial to him than detrimental to his former spouse. *Crosswhite*, 148 F.3d at 884–85; *Lipira v. Kaczmarski (In re Kaczmarski)*, 245 B.R. 555, 564 (Bankr.N.D.Ill.2000); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 764 (Bankr.N.D.Ill.) (citations omitted), *aff'd*, 199 B.R. 37 (N.D.Ill.1996); *Jenkins v. Jenkins (In re Jenkins)*, 202 B.R. 102, 104 (Bankr.C.D.Ill.1996). The Debtor must meet the showing required on only one of the two prongs of § 523(a)(15) to prevent the debt from being excepted from discharge. *Paneras*, 195 B.R. at 404.

■ The debt will remain dischargeable if paying the debt would reduce the Debtor's income below that necessary for the support of him and his dependents. *Jenkins*, 202 B.R. at 104; *Hill v. Hill (In re Hill)*, 184 B.R. 750, 754 (Bankr.N.D.Ill. 1995). Because the language of § 523(a)(15) mirrors the disposable income test found in 11 U.S.C. § 1325(b)(2), courts have utilized an analysis similar to that used in determining disposable income in Chapter 13 cases. *Hill*, 184 B.R. at 755; *Paneras*, 195 B.R. at 404; *Jenkins*, 202 B.R. at 104.

■ Determining the dischargeability of a debt under § 523(a)(15) requires the evaluation of several factors: (1) the debtor's ability to pay the subject debt, (2) the non-debtor spouse's ability to pay the subject debt, and (3) the financial repercussions to the non-debtor spouse of discharging the debt. *Jenkins*, 202 B.R. at

104–05. If the debtor is found to lack the ability to repay the debt, the inquiry ends at § 523(a)(15)(A) and the debt is deemed dischargeable. *Id.* at 105. If, however, the debtor is found to have the ability to repay the debt, the inquiry proceeds to § 523(a)(15)(B) to consider the non-debtor spouse's ability to pay the debt. *Id.*

Turning to § 523(a)(15)(B), the legislative history reveals that if discharging the debtor would inflict little or no detriment on the non-debtor spouse the debt must be discharged. Specifically it provides:

> For example, if a nondebtor spouse would suffer little detriment for the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

140 Cong. Rec. H10752–1 (daily ed. Oct. 4, 1994).

A "totality of the circumstances" test is the general method used for weighing benefit and detriment under § 523(a)(15)(B). *Crosswhite,* 148 F.3d at 888–89. Courts examining the issue have weighed several factors which include: (1) the income and expenses of both parties; (2) the nature of the debt; (3) the former spouse's ability to pay; (4) the number of dependents; and (5) the reaffirmation of any debts. *See Rossi v. Rossi (In re Rossi),* 1999 WL 253124 at *6 (Bankr. N.D.Ill. April 27, 1999); *Paneras,* 195 B.R. at 404 (citations omitted); *Hill,* 184 B.R. at 756; *Jenkins,* 202 B.R. at 105. Some of those factors, the first, second, third and fourth, have been considered here. There is no evidence to show that the Debtor reaffirmed any pre-petition debts pursuant to 11 U.S.C. § 524(c) and (d).

Several courts have found that equity weighs against discharge where the debtor has the ability to pay a debt. *Carroll v. Carroll (In re Carroll),* 187 B.R. 197, 201 (Bankr.S.D.Ohio 1995) ("Discharging this obligation would simply provide Debtor with additional disposable income to 'use at his discretion.' This is not the type of benefit that § 523(a)(15)(B) sought to protect."); *Florio v. Florio (In re Florio),* 187 B.R. 654, 658 (Bankr.W.D.Mo. 1995) (quoting *Carroll*). In determining whether a debtor has the ability to pay a debt, the Court must consider not only whether the debtor could pay the debt in a lump sum, but also whether the debtor has the ability to pay the claim in installments over time from future income. *Taylor,* 191 B.R. at 767; *Jenkins,* 202 B.R. at 105.

Initially, the Court will address the Debtor's argument that the Law Firm lacks standing to bring a § 523(a)(15) cause of action. The Debtor cites two cases, *Savage, Hernandon & Turner v. Sanders (In re Sanders),* 236 B.R. 107 (Bankr.S.D.Ga.1999) and *Barstow v. Finaly (In re Finaly),* 190 B.R. 312 (Bankr. S.D.Ohio 1995), for the proposition that only a spouse, former spouse or child of a debtor, to whom the debt is owed, has standing under § 523(a)(15). There is a split of authority on this point with the majority of reported decisions following the Debtor's argument, *see Sanders,* 236 B.R. at 110; *Abate v. Beach (In re Beach),* 203 B.R. 676, 680 (Bankr.N.D.Ill.1997); *Woodruff, O'Hair & Posner, Inc. v. Smith (In re Smith),* 205 B.R. 612, 615 (Bankr. E.D.Cal.1997); *Brian M. Urban Co., L.P.A. v. Wenneman (In re Wenneman),* 210 B.R. 115, 118–19 (Bankr.N.D.Ohio 1997); *Travis v. Douglas (In re Douglas),* 202 B.R. 961, 963 (Bankr.S.D.Ill.1996); *Finaly,* 190 B.R. at 315; *Woloshin, Tenenbaum and Natalie, P.A. v. Harris (In re Harris),* 203 B.R. 558, 561 (Bankr.D.Del. 1996); *Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 304 n. 33 (Bankr.D.R.I. 1996), and a minority view to the contrary. *See Zimmerman v. Soderlund (In re So-*

*derlund),* 197 B.R. 742, 747 (Bankr. D.Mass.1996). The legislative history of § 523(a)(15) supports the position that this exception can be asserted only by the other party to the divorce or separation. *See* 140 Cong. Rec. H10752, H10770 (daily ed. Oct. 4, 1994).

The Seventh Circuit has not decided this issue. Therefore, the Court is not bound by the majority view. The language of § 523(a)(15), unlike the language of § 523(a)(5), does not limit or even reference any limitation on the party who may seek this exception to the discharge of a "property settlement" debt. Compare the language used in § 523(a)(5) which excepts the debt owed "to a spouse, former spouse, or child of the debtor." *See* 11 U.S.C. § 523(a)(5). The Seventh Circuit in the context of § 523(a)(5), expanded the language in that statute to allow an attorney to seek to have a debt held non-dischargeable. *See Rios,* 901 F.2d at 72 ("awards of attorneys' fees for services in obtaining support order have been held non-dischargeable even though the attorney is neither a spouse, a former spouse, nor a child of the debtor"). Under *Rios,* the Seventh Circuit has expanded this group to include attorneys who incur fees for spouses, former spouses and children to enforce alimony, support or maintenance obligations of debtors who subsequently file for bankruptcy relief. Thus, if the Seventh Circuit has construed the language in § 523(a)(5), which limits the exception to certain protected parties, and expanded its scope to cover attorneys for such parties, it logically follows that § 523(a)(15), which does not contain such limiting language, may allow third party creditors of debtors to pursue relief where appropriate under that exception.

Section 523(a)(15), on the other hand, does not contain this preambulatory language. Rather, that subsection provides that it not be "of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agree-ment...." 11 U.S.C. § 523(a)(15). The statutory language employed in § 523(a)(15) does not limit the party creditors who seek to invoke it to spouses, former spouses or children of bankrupt debtors.

If the majority view is correct, then the Law Firm must lose. However, assuming the Court agrees with the minority position that the Law Firm has standing to pursue a § 523(a)(15) cause of action against the Debtor, application of the above authorities to the matter at bar and the evidence adduced at trial requires the Court to find in favor of the Debtor. The Court finds that the Debtor has demonstrated that he lacks the present ability to pay the debt from income or property not needed to support himself or his dependents. The credible testimony and documentary evidence offered at the trial demonstrated that the Debtor is presently unable or reasonably likely in the foreseeable future to pay the debt to the Law Firm. The Debtor's current total monthly income is $4,000.00 and his monthly expenses are $4,212.00. *See* Debtor's Exhibit K. He testified that he is only able to work approximately 20 hours per week for a small law firm doing insurance defense practice. He earns $50.00–55.00 per hour from this law firm for the specialized work he performs. The Debtor testified that he has been unable to find other work more remunerative as a practicing attorney. There is no evidence that the Debtor turned down any offers of better paying employment.

The Debtor's former spouse notes that Debtor's Exhibit K differs from his bankruptcy petition which lists his monthly expenses at $3,282.00. *See* Law Firm's Exhibit No. 19. The Debtor's former spouse maintains that this discrepancy makes it clear that the Debtor's estimates of his expenses are not credible. In addition, Wendy R. Morgan ("Ms. Morgan"), the principal of the Law Firm, testified that, in her opinion, the Debtor should be earning approximately $350.00 per hour for his

work as an attorney. She also testified, that in her opinion, the Debtor has not searched hard enough for a higher paying job. While Ms. Morgan is entitled to her opinions, they do not serve as a comprehensive survey of the current legal job market in the metropolitan Chicago area for lawyers who have concentrated their practice for twenty years in insurance defense work. The Court has no reason to question the Debtor's testimony and evidence that he is earning the best he can given his experience and expertise.

The Court finds the Debtor's testimony credible regarding his inability to secure more lucrative employment. The Debtor testified that the practice of law has become increasingly crowded which has made it difficult for him at his age and with his experience to find other employment. Further, the Court finds that the difference in the Debtor's expenses listed in the bankruptcy petition and Debtor's Exhibit K does not necessarily render the Debtor's testimony incredible. The Debtor testified that the approximate $1,000.00 monthly increase was due to his business expenses which have developed post-petition.

The Debtor's former spouse, on the other hand, receives $2,400.00 in monthly net income as well as $1,247.00 from the Debtor for child support. *See* Law Firm's Exhibit No. 28. The Debtor's former spouse testified that she has approximately $15,250.00 in repairs that she must make to her sixty year old home. She testified that the house needs a new roof which will cost approximately $7,000.00, and she must replace a front picture window at approximately $4,000.00. The list of income and expenses submitted by the Debtor's former spouse shows that her monthly expenses, including these repairs, exceeds her income. *See* Law Firm's Exhibit No. 28. While these house repairs and capital improvements may be eventually required, the Court finds that the Debtor is in greater financial straits than his former spouse. A review of the monthly living expenses shows that the Debtor lacks the present ability to pay the debt to the Law Firm and has no probable likelihood of earning greater income over the reasonably foreseeable future.

In addition, the Debtor has demonstrated under § 523(a)(15)(B) that the discharge of the debt will be more beneficial to him than detrimental to his former spouse. Pivotal to this determination is whether the Law Firm can pursue the Debtor's former spouse for the attorney's fees she incurred in connection with the Law Firm's representation of her in the marital dissolution proceeding. The Law Firm argues that it can still pursue the Debtor's former spouse for the payment of the attorney's fees, despite the language contained in the April 3rd Agreed Order which dismissed any claim the Law Firm had against the former spouse for payment of its attorney's fees with prejudice. This is because the Debtor did not in fact pay the Law Firm, so the Judgment is not a final and appealable order, and the State Court retains jurisdiction to enforce its own orders according to the Law Firm. Consideration of this issue necessarily involves a closer look at the Assignment and the consideration given by the Debtor's former spouse and the Law Firm to each other.

An assignment is a transfer of some identifiable property, claim or right from assignor to assignee. *Department of Transp. v. Heritage–Pullman Bank and Trust Co.*, 254 Ill.App.3d 823, 826, 194 Ill.Dec. 75, 627 N.E.2d 191, 192 (1st Dist. 1993) (citation omitted). It operates to transfer to the assignee all of the assignor's right, title or interest in the matter assigned. *In the Matter of the Estate of Martinek*, 140 Ill.App.3d 621, 629, 94 Ill. Dec. 939, 488 N.E.2d 1332, 1337 (2d Dist. 1986) (citations omitted). Generally, no particular form of assignment is required. *Stoller v. Exchange Nat. Bank of Chicago*, 199 Ill.App.3d 674, 681, 145 Ill.Dec. 668, 557 N.E.2d 438, 443 (1st Dist.1990). Some valuable consideration is necessary to support an assignment. *Robert S. Pinzur, Ltd. v. The Hartford*, 158 Ill.App.3d 871,

877, 110 Ill.Dec. 961, 511 N.E.2d 1281, 1286 (2d Dist.1987), *appeal denied,* 116 Ill.2d 575, 113 Ill.Dec. 317, 515 N.E.2d 126 (1987); *Dr. Charles W. Smith III, Ltd. v. Connecticut Gen. Life Ins. Co.,* 122 Ill. App.3d 725, 727, 78 Ill.Dec. 485, 462 N.E.2d 604, 606 (1st Dist.1984). The intent of the parties to the assignment is a question of fact which can be derived not only from an instrument executed by the parties, but also from the surrounding circumstances to the transfer. *Stoller,* 199 Ill.App.3d at 681, 557 N.E.2d at 443 (citations omitted).

■ The Court finds that there was a valid and binding Assignment at the time it was made. The consideration for same was that the Law Firm gave up its claim against the Debtor's former spouse for the unpaid attorney's fees she owed it to date. There is no other consideration from the Law Firm to the former spouse to support the Assignment absent a relinquishment of its claim for the unpaid fees she owes. In exchange, the Debtor's former spouse gave the Law Firm her vested right under the Judgment to receive the portion of the capital account owed to the Debtor from his former law partnership under the Judgment. If the Law Firm is now allowed to pursue its former client, despite the language in the April 3rd Agreed Order which dismissed its claim against the former spouse, there would be no valid consideration passing from the Law Firm to the former spouse for the Assignment. The Court thus concludes the language contained in the April 3rd Agreed Order requires the determination that the Law Firm dismissed with prejudice any claim it had against the Debtor's former spouse for the payment of her attorney's fees in exchange for her conveyance of the interest she had in the Debtor's capital account. Accordingly, the Law Firm's inability to pursue the Debtor's former spouse for the payment of its unpaid attorney's fees demonstrates that the discharge of the debt at bar is of no detriment to her.

The Law Firm's recitation of cases that pertain to the State Court retaining juris-diction over its orders and the proposition that the April 3rd Agreed Order is not a final appealable order sheds little light on the matter at bar. All of those cases are inapposite to the facts and law at hand.

Hence, the Court finds that the Debtor does not have the present or likely future ability to pay the debt to the Law Firm for purposes of § 523(a)(15)(A). In addition, the Debtor has met the "detriment test" under § 523(a)(15)(B) because the discharge of the debt will benefit him with no detrimental consequences to his former spouse or children. Consequently, the Court holds that the debt owed to the Law Firm is dischargeable under § 523(a)(15).

## V. *CONCLUSION*

For the foregoing reasons, the debt owed by the Debtor to the Law Firm is dischargeable under § 523(a)(4), (a)(5) and (a)(15).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.