**In re Earl Solomon BAKER, Debtor.**

**Luvenia Sutton Baker and Ken Lester, Esquire, Plaintiff,**

v.

**Earl Solomon Baker, Defendant.**

**Bankruptcy No. 99–10575–W.
Adversary No. 00–80048–W.**

United States Bankruptcy Court, D. South Carolina.

Oct. 13, 2000.

---

Kevin Campbell, Mt. Pleasant, SC for trustee.

Michael D. Moore, Summerville, SC, for debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Complaint of Luvenia Sutton Baker and Ken Lester, Esquire (collectively "Plaintiffs"), filed on March 3, 2000, seeking the determination that certain debts and obligations, arising from the Order of the Family Court of the Fifth Judicial Circuit in the State of South Carolina, as well as attorney's fees awarded to Ms. Baker in connection with the divorce proceedings, are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(5) and (a)(15).[1] After reviewing the pleadings in this matter, hearing the arguments of counsel at trial, and considering the evidence presented; the Court hereby makes

---

1. Further references to the Bankruptcy Code shall be by section number only.

the following Findings of Fact and Conclusions of Law.[2]

## FINDINGS OF FACT

1. Luvenia Baker and Earl Solomon Baker ("Defendant" or "Debtor") were married on June 25, 1976, and two children were born of their marriage. Both children were emancipated at the time of the divorce.

2. The couple's separation proceedings commenced on June 26, 1995 by Ms. Baker's filing of a Motion for Temporary Relief, Summons and Complaint.

3. A final hearing concerning the parties' divorce was scheduled and heard on July 1 and July 5, 1996 in the Family Court. However, the trial was not concluded at that time and was rescheduled for completion on November 12, 1996.

4. The hearing resulted in a Final Order and Decree of Divorce (the "Final Order") issued by the Family Court and filed on May 28, 1997.

5. Following the entry of the Final Order, both parties filed motions for reconsideration; and, by Amended Final Order dated July 25, 1997, the Family Court modified some of the provisions in its earlier Final Order to provide, among other things, that Ms. Baker's $2,500 attorney fee award be paid by Defendant in a lump sum rather than in increments over time.

6. Both parties appealed the Amended Final Order. Ms. Baker contended that the Family Court had abused its discretion by awarding $2,500 in attorney's fees, when the actual debt that she incurred to her attorney as a result of the marital litigation amounted to $24,754.44. The South Carolina Court of Appeals acknowledged that the Family Court had failed to make sufficient factual findings on the record to justify the imposition of minimal attorney's fees, while recognizing that the significant increase in fees was caused by Defendant's lack of cooperation in discovery.[3] Accordingly, the Court of Appeals reversed and remanded the matter to the Family Court for reconsideration of the award of attorney's fees to Ms. Baker.

7. By Order From Proceedings on Remand filed on or about December 15, 1999, the Family Court amended the prior Amended Final Order to provide for an award to Ms. Baker of attorney's fees and costs in the amount of $15,000. More specifically, the Order provides in pertinent part:

> [T]he Decree and Amended Final Order in this action shall be amended to provide Plaintiff is entitled to attorney fees, costs and suit money in the amount of

---

2. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

3. In the Final Order of May 28, 1997, the Family Court had found that "Plaintiff's May 13, 1996 filing of a Rule to Show Cause and Contempt Complaint [due to] Defendant['s] lack of reasonableness when attempting to settle this matter, [caused] Plaintiff's attorney fees and costs [to] increase[ ] substantially." In the Family Court's Order From Proceedings on Remand filed on or about December 15, 1999, the Court also emphasized Defendant's noncompliance with discovery request and with the court's orders. The Order provided:

> Because of Defendant's noncompliance with reasonable discovery requests, Plaintiff was caused to file a motion seeking a continuance of the final hearing. Even after ordered by the Court during the course of the trial to produce information requested in Plaintiff's motion to compel and contempt complaint, Defendant still refused to comply. Plaintiff incurred additional fees defending Defendant's Motion for Financial Emergency and Other Matters.

$15,000.00, which shall be paid by Defendant, *as an incident of support to Plaintiff,* directly to Ken H. Lester, Esquire, over a six (6) month period in three (3) equal installments . . .

(Emphasis added).

8. In both the Final Order and the Order From Proceedings on Remand, the Family Court emphasized that the factual situation of the case warranted an award of attorney's fees to Ms. Baker when considering, among other things, the fact that her "current financial declarations demonstrate her inability to pay her own attorney's fees and the effect of such payment on her standard of living." [4]

8. Ken H. Lester, Esquire represented Ms. Baker during her divorce up until the appeal, at which time Russ Putman, Esquire began representing her. As a result of his outstanding fees due and owed to him by Defendant, Mr. Lester is also a party in this adversary proceeding and joins Ms. Baker in her request that Defendant's debt to Mr. Lester in the amount of $15,000 be deemed nondischargeable.

9. The Final Order of the Family Court, filed on May 28, 1997, also granted a divorce on the ground of one year's continuous separation and further granted an approximately equal division of marital assets. As to the division of marital debts, the Family Court ordered that "[Ms. Baker] should assume forty-five (45%) percent of the marital debt and Defendant should assume fifty-five (55%) of the marital debt."

10. According to the Final Order and the Amended Final Order, Ms. Baker was to assume the following marital debts:

| Creditor | Balance [5] |
| --- | --- |
| Discover (1) | $4,308.31 |
| Citicorp Visa | $3,909.04 |
| Capital One | $5,167.59 |
| Sears (1) | $2,569.87 |
| SCE & G | $1,374.60 |
| Sears (2)* | $4,312.65 |
| Pentagon FCU Visa* | $3,059.69 |
| Discover (2)* | $2,477.66 |

11. According to the Final Order and Amended Final Order, Defendant was to assume the following debts:

| Creditor | Balance |
| --- | --- |
| AAFES | $ 2,863.62 |
| Bullard Furniture | $ 2,342.38 |
| AT & T MasterCard | $ 1,998.78 |
| American Express Optima | $ 1,966.76 |
| American Express Gold* | $11,207.56 |
| Rhodes Furniture* | $ 2,100 |
| First Deposit Visa | $ 4,553.49 |
| Nations Credit (revolving charge)* | $ 3,474.17 |
| Bank of America Visa* | $ 3,892.11 |
| Credit First Firestone | $ 860.13 |
| Chase MasterCard | $ 1,779.33 |
| Chase Visa | $ 1,496.24 |
| Pentagon FCU Creditline* | $16,531.54 |

**\* The asterisked debts reflect joint marital debts.**

12. Pursuant to the Family Court's Amended Final Order, the balances of the joint debts that Ms. Baker had to assume (Sears (2), Pentagon FCU Visa, and Discover) were the balances owed at the date of the last statement, as reflected in the exhibits attached to the Final Order. The Final Order and Amended Final Order specify that Ms. Baker "should only be responsible for the balances as stated . . . Any additional debt incurred after the date reflected [on the exhibits] should be the

**4.** The Family Court considered the factors outlined in *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991), in making a determination of whether an attorney's fees award was warranted in this case. The factors that the court analyzed are the following: (1) contingency of compensation; (2) beneficial results obtained; (3) the parties' ability to pay the attorney's fees; (4) the parties' financial conditions; and (5) the effect that the attorney's fees will have on each party's standard of living.

**5.** The balances of the various debts were reflected on the exhibits of the Family Court's Order of May 28, 1997 and show the balance owed as of the date of the final divorce decree.

sole responsibility of the party incurring that debt."

13. In the Complaint filed with the Court on March 3, 2000, Ms. Baker seeks the non-dischargeability of the following debts:

a. American Express Gold
b. Bank of America Visa
c. Discover (2)
d. Pentagon FCU Creditline
e. Pentagon FCU Visa
f. NationsCredit
g. Rhodes Furniture
h. Sears (2)
I. Universal Medical Associates

14. Universal Medical Associates is a debt in the amount of $312.00 listed in Debtor's Schedule F. The debt was listed as having a co-debtor. At the trial, Ms. Baker testified that she had no personal knowledge of this debt, and that she was first informed by her attorney in the present adversary proceeding, that it had been listed in Debtor's Schedules.

15. Despite her failure to request it in the Complaint, at trial Ms. Baker also requested that Defendant's debt owed to Chase MasterCard, with a balance of approximately $2,141.00, as listed in Schedule H, be deemed nondischargeable. Even though the debt was not listed in Debtor's Schedules as a joint marital debt, Ms. Baker testified that the debt owed by Debtor on the MasterCard appears as a "bad debt" on her credit report.

16. Despite the fact that, pursuant to the Final Order and Amended Final Order of the Family Court, the debts owed to Discover, Pentagon FCU Visa, and Sears were to be assumed by Ms. Baker; she claims that Defendant continued charging debts to those cards. As of the date of the petition, the balances on the debts were approximately as follows:

a. Discover (2) $4,724 (increase of $2,246.34 since the time of the divorce)
b. Pentagon FCU Visa $5,977.87 (increase if $2,918.18 since the time of the· divorce)
c. Sears (2) $8,106 (increase of $3,793.35 since the time of the divorce)

Therefore, Ms. Baker also requests that the differences on those debts between the balance reflected on the exhibits to the Final Order of the Family Court and the present balance be deemed nondischargeable.

17. Pursuant to the Final Order of the Family Court, Ms. Baker was also awarded a portion of Defendant's military retirement pay. In accordance with the marital property division laws of the State of South Carolina, the Family Court awarded Ms. Baker an amount equivalent to 29.615% of Defendant's monthly disposable military pension. In calculating that amount, the Family Court used a formula which took into account the length of time that the parties were married during Defendant's active duty and divided that by two to represent Ms. Baker's interest. The Final Order further provided that Ms. Baker "shall receive the portion of Defendant's Military Retired Pay awarded by [the] Order directly from DFSA or its successor, payable from Defendant's retired pay."

18. Ms. Baker is presently receiving approximately $609.00 as her share of disposable military retirement pay.

19. The Final Order also provides that:

The Defendant shall elect to participate and/or maintain at his current participation in the Survivor' Benefit Plan (SBP) and continue to designate the Plaintiff, as his sole and permanent beneficiary, with the amount of the monthly premium being paid directly to Plaintiff as alimony, which alimony shall be non-deductible to Defendant and non-taxable to Plaintiff, said payments beginning January 15, 1997. The present SBP payment amount of $147.03 and the SBP payment shall be Plaintiff's responsibility once Defendant begins the above alimony payments.

20. As to the award of alimony, the Amended Final Order clarified the prior Final Order to provide the following: "I find Plaintiff's request for alimony is granted with respect to the SBP premium and this alimony payment should be non-deductible to the Defendant and non-taxable to the Plaintiff." [6]

21. At the trial, Ms. Baker testified that, at the time of the divorce, her yearly income was between $25,000 and $28,000. Ms. Baker is presently employed and works forty hours per week. She testified that her present bi-weekly gross income is approximately $1,336.00. Ms. Baker also receives approximately $609.00 a month as her share of Defendant's disposable military retirement pay.

22. Ms. Baker presently lives in the ex-marital home, which she received through the divorce. She testified that the value of the home is approximately $95,000 to $98,000; however, because of a mortgage on the home of between $78,000 and $79,000, Ms. Baker's equity in the home is approximately $20,000.

23. According to her testimony, Ms. Baker has no valuable assets beside the ex-marital home. She owns no stock, and she had approximately $1,200 in her bank savings account as of the date of trial. She also owns a vehicle which has been fully paid for.

24. Following the divorce, Ms. Baker has not remarried and presently has no dependents.

25. At the time of the divorce, Ms. Baker was in good health and was not suffering from any medical conditions. However, following the divorce, Ms. Baker was diagnosed with breast cancer and had to undergo treatment. She is presently in remission and works full time.

26. No evidence was introduced at trial regarding Ms. Baker's monthly budget and expenses.

27. At the time of the divorce, Mr. Baker's net monthly income was of approximately $4,173.51, as reflected in the Financial Declaration dated July 5, 1996. At that time, Mr. Baker was earning approximately $2,769.24 a month from his business. He was, and still is, self-employed and in the business of recruiting drivers. At the time of the divorce, Defendant was also receiving $1,732.00 a month from pensions and retirement plans, $400.00 in disability, and $70.00 in rental property. [7]

28. Defendant operates a driver-recruiting business; which, as testified to at trial and as reflected in his Schedules, is presently not profitable. Debtor's Schedule I reflected the following income for Debtor:

| | |
|---|---|
| Monthly gross wages | $1,691.67 [8] |
| (Subtotal of payroll deductions) | $ 191.42 |
| Total Net Monthly Take Home Pay | $1,500.25 |
| Pension or Retirement Income | $2,326.00 [9] |
| TOTAL MONTHLY INCOME | $3,826.25 |

6. The Final Order provided: "I find Plaintiff's request for alimony is denied, except as spelled out above." The "spelled out above" language referred to the prior paragraphs dealing with the SBP.

7. A second Financial Declaration dated November 11, 1996, reflected a lower income for Debtor. That document, in fact, indicated that Debtor had a gross monthly salary of $1,666.00 and reported income from pensions and retirement in the amount of $1,787.00, as well as disability income of $400.00. After deducting various expenses such as taxes and social security, Defendant's net monthly income was reported at $2,827.00.

8. At the trial, Defendant testified that, as shown on Scheduled J, the regular expenses from the operation of his business average $1,876.00 monthly. Thus, Defendant is netting a monthly loss of approximately $376.00.

9. At the trial, Defendant testified that his basic retirement salary is presently in the amount of $2,381.00.

29. From the amount that Defendant receives in retirement, Ms. Baker's share is subtracted as ordered by the Family Court. At the trial, Defendant testified that after the various deductions, he receives approximately $1,573.19 in disability and retirement pay. Thus, when calculating his total income from both his business and the disability and retirement pay, after deducting for Ms. Baker's portion, Defendant's present monthly net take home pay is approximately $3,074.00.

30. Since his divorce from Ms. Baker, Defendant has remarried. At the time of the filing of the Chapter 7 case, his new spouse was earning approximately $2,514.00 per month. Debtor's Schedule I shows that her total net monthly take home pay, after deducting for payroll taxes and social security, insurance, and mandatory retirement contribution, was in the amount of $1,663.00.

31. At the trial, Defendant testified that, as of January of 2000, his new spouse is no longer working and is receiving disability retirement pay in the amount of $1,450.73 per month.[10] Thus, the combined monthly earnings between himself and his new spouse are approximately $4,524.00.[11]

32. Defendant is currently suffering from some medical conditions. He testified at trial that he is diabetic and that, as a result, his health is deteriorating. Furthermore, he testified that he has had some problems with his vision which have resulted in two eye surgeries.

33. Debtor's Schedule J reflects the following information regarding his and his new spouse's monthly expenditures:

| | |
|---|---|
| Rent or home mortgage | $1,106.00 |
| Electricity and Heating Fuel | $ 150.00 |
| Water and Sewer | $ 35.00 |
| Telephone | $ 50.00 |
| Cable | $ 58.00 |
| Home Maintenance | $ 50.00 |
| Food | $ 150.00 |
| Clothing | $ 50.00 |
| Laundry and Dry Cleaning | $ 45.00 |
| Medical and Dental Expenses | $ 50.00 |
| Transportation | $ 65.00 |
| Recreation | $ 25.00 |
| Charitable Contributions | $ 25.00 |
| Homeowner's Insurance | $ 46.33 |
| Life Insurance | $ 65.00 |
| Health Insurance | $ 300.00 |
| Auto Insurance | $ 66.00 |
| Survival Benefit Plan | $ 150.00 |
| Personal/property Taxes | $ 56.75 |
| Car Payments | $ 316.01 |
| Alimony, maintenance, or support | $ 595.25 [12] |
| Regular expenses from operation of business | $1,876.00 |
| | |
| TOTAL | $5,330.35 |

34. At the trial, Defendant testified that he is no longer paying $300.00 a month for health insurance; however, due to his and his spouse's medical conditions, the medical expenses have increased. They presently spend an average of $200.00 a month for medicines. According to Defendant's testimony, the other expenses have remained the same.

35. Defendant and his new spouse reside in Summerville, South Carolina. The house they presently live in used to be titled in both their names; however, pursuant to the Chapter 7 bankruptcy case and the Order Approving Sale of Asset Subject to Liens and Co–Owner's Interest entered on June 15, 2000, the Chapter 7

---

10. Defendant testified that his new wife suffers from arthritis at an advanced level, and her medical condition is not likely to improve in the future.

11. This amount includes the income from Defendant's business; however, as discussed previously in the Order, the business is not profitable and the operating expenses exceed the income received. If the income from the business were not taken into account, due to

its unprofitability, Defendant and his spouse's income is approximately $3,030.

12. This amount represents the share of military retirement that is paid to Ms. Baker. As of the date of the trial, that amount had increased to $609.48. This amount has been properly credited for as a deduction in Defendant's income; therefore, it is not proper to list it as an expense.

Trustee sold Debtor's one-half interest in the home to his spouse for the sale price of $7,000. Defendant and his spouse presently pay approximately $1,106.00 in monthly mortgage payments on the house.

36. Upon the divorce from Ms. Baker, Defendant acquired sole interest in two houses, which used to be rental property during their marriage. Defendant has sold both houses and received profits in the amount of approximately $3,000 and $12,500. At the trial, Defendant testified that the majority of the money from the latter sale was spent on repairs to the properties, attorney's fees, bills, and costs related to his bankruptcy.

## CONCLUSIONS OF LAW

Ms. Baker filed a Complaint seeking a determination that certain obligations and debts of her ex-husband be deemed nondischargeable pursuant to §§ 523(a)(5) and (a)(15). More specifically, Ms. Baker seeks the nondischargeability of various credit cards and credit line debts as well as the nondischargeability of Defendant's obligation to pay her portion of his military retirement pay and to pay her premium for the SBP as established by the Family Court. Furthermore, Ken H. Lester, Esquire joined Ms. Baker in her request that Defendant's obligation to pay his ex-wife's attorney $15,000, representing a portion of the fees incurred during the divorce proceedings, be deemed nondischargeable.

 The Bankruptcy Code is generally intended to be "rehabilitative in nature and must be construed strictly in favor of its salutary purpose, debtor relief." *Williams v. Holt (In re Holt)*, 40 B.R. 1009, 1011 (S.D.Ga.1984). However, the Code also recognizes that alimony and child support are unavoidable liabilities and that, in certain situations, debts incurred in connection with separation agreements or divorce decrees are also

nondischargeable. Thus, §§ 523(a)(5) and (a)(15) of the Bankruptcy Code depart from the general policy that a debtor should receive a "fresh start" through bankruptcy and rather " 'enforce an overriding public policy favoring the enforcement of family obligations.' " *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 372 (Bankr.N.D.Ga.1996) (quoting *Shaver v. Shaver (In re Shaver)*, 736 F.2d 1314, 1315–16 (9th Cir.1984)); *see also Holliday v. Kline*, 65 F.3d 749, 751 (8th Cir.1995); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1489 (10th Cir.1995); *In re Holt*, 40 B.R. at 1011.

Pursuant to § 523(a)(5), a debt payable to a spouse or child which is in the nature of alimony or support is nondischargeable. More specifically, the section provides:

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise ...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The nondischargeability provisions of § 523 were broadened by the enactment of the Bankruptcy Reform Act of 1994. Section 523(a)(15) was codified that year to

prohibit dischargeability of certain debts pursuant to divorce separation agreements which did not fall within the category of debts listed in § 523(a)(5). Subsection (a)(15) provides in pertinent part:

(a) A discharge under section 727; 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) [alimony, maintenance or support] that is incurred by the debtor in the course of divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

Section 523(a)(15)'s "catchall" characteristic gives the Court a second requirement that must be met prior to deciding that a debt incurred through divorce proceeding, but which is not deemed to be in the nature of support or alimony, is nondischargeable. Thus, "through their cooperative effect, [§§ ] 523(a)(5) and (a)(15) make all divorce-related obligations subject to a general rule of nondischargeability in bankruptcy." *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 372 n. 1 (Bankr.N.D.Ga.1996). In this case, the Court will analyze the nondischargeability of the subject obligations pursuant to § 523(a)(5), or, in the alternative, § 523(a)(15).

### 1. Attorney's Fees

By Order From Proceedings on Remand entered on December 15, 1999, the Family Court found that the attorney fees and costs that had been incurred by Plaintiff were in the amount of $34,516.60.[13] Of that amount, the Family Court awarded Plaintiff attorney's fees in the amount of $15,000, and found that the fees "should be paid by Defendant, as an incident of support to Plaintiff, directly to Ken H. Lester, Esquire, over a six (6) month period in three (3) equal installments, with the first payment due December 1, 1999, the second payment due February 1, 2000, and the final payment due April 1, 2000."

Plaintiffs claim that the award of attorney's fees to Ms. Baker is nondischargeable pursuant to § 523(a)(5). In order to make such a determination, the Court must consider two issues. The first involves a question of law, that is, whether an award of attorney fees can be dischargeable in bankruptcy even if it is payable directly to the attorney. The second issue is a question of fact, and it involves the Court's analysis of whether the fee award is deemed to be in the nature of support or alimony to meet the requirements of § 523(a)(5). *See, e.g. Burns v. Burns (In re Burns)*, 186 B.R. 637, 641 (Bankr.D.S.C.1992) (citing *Cribb v. Cribb (In re Cribb)*, 34 B.R. 862 (Bankr.D.S.C. 1983)) ("To be nondischargeable under

---

**13.** That amount included attorney's fees and costs incurred for representation on appeal as well as preparation for the proceedings on remand.

[§ 523(a)(5) ] an obligation [ ] must satisfy this two-prong test: first, the obligation must be payable on behalf of a spouse, former spouse or child; and, second, the obligation must be in the nature of alimony, maintenance or support."); *see also Holliday v. Kline (In re Kline),* 65 F.3d 749, 750–51 (8th Cir.1995); *Rosenman & Colin, LLP v. Jarrell (In re Jarrell),* 251 B.R. 448, 451 (Bankr.S.D.N.Y.2000).

■ The Court finds that both prongs are satisfied in the case presently before it. As to the first issue, the Court finds that the fact that the Family Court ordered Debtor to pay $15,000 in attorney's fees directly to his ex-wife's lawyer, Ken H. Lester, Esquire, does not alter the Court's finding. The majority view among jurisdictions is that "the attorney's fees need not be payable directly to the debtor's former spouse [in order to be deemed nondischargeable] as long as the payment is on behalf of the spouse." *In re Burns,* 186 B.R. at 643; *see also In re Kline,* 65 F.3d at 750–51; *Miller v. Gentry (In re Miller),* 55 F.3d 1487, 1490 (10th Cir.1995) (noting that "several recent bankruptcy court opinions have specifically rejected a strict plain language interpretation of § 523(a)(5) and have held that it is the nature of the debt owed that determines its dischargeability, not the identity of the payee" in concluding that guardian ad litem and psychologist fees awarded in the case came within the exception of § 523(a)(5)); *Pauley v. Spong (In re Spong),* 661 F.2d 6, 10–11 (2d Cir.1981) ("We conclude that it would be exalting form over substance to fail to treat appellee's agreement to pay his wife's counsel fee as a 'debt … to a spouse … for alimony … maintenance …, or support', and that, therefore, [the debt] is nondischargeable in bankruptcy."); *Morgan v. LeRoy (In re LeRoy),* 251 B.R. 490, 501 (Bankr.N.D.Ill.2000); *In re Jarrell,* 251

B.R. at 451; *Robinson v. Robinson (In re Robinson),* 193 B.R. 367, 372 (Bankr. N.D.Ga.1996); *Williams v. Holt (In re Holt),* 40 B.R. 1009, 1011–12 (S.D.Ga.1984) ("[A] debt to a spouse or former spouse is not confined only to obligations payable to such person …. [N]otwithstanding the fact that the actual promissory note or contract is literally payable to a third party, the 'debt' which is created by the separation agreement or decree and therefore is non-dischargeable, is the undertaking of a former spouse to pay a past or future obligation of the other spouse, or the couple."); *Vendegna v. Vendegna (In re Vendegna),* C/A No. 92–71590–B; Adv. Pro. 92–8183–B (Bankr.D.S.C.12/14/1992) ("[T]he attorneys fees need not be payable to the former spouse so long as they are payable on behalf of the former spouse.").

In this case, the fact that the Family Court's Order From Proceedings on Remand orders that the attorney's fees be paid directly to Mr. Lester is of no consequence to the Court's determination of nondischargeability pursuant to § 523(a)(5). Courts, in fact, have viewed this arrangement as a "paradigmatic third party beneficiary contract," rather than an assignment which prohibits a finding of nondischargeability pursuant to § 523(a)(5)(A). *In re Spong,* 661 F.2d at 11.

■ Therefore, the next issue becomes whether Debtor's obligation to pay $15,000 to his ex-wife's attorney who represented her during the divorce proceedings is deemed to be an obligation in the nature of support or alimony. The objecting party bears the burden to prove that the debt in question is nondischargeable. *Miller v. Gentry (In re Miller),* 55 F.3d 1487, 1489 (10th Cir.1995); *Catron v. Catron,* 164 B.R. 912, 916 (E.D.Va.1994), *aff'd* 43 F.3d 1465 (4th Cir.1994); *Brabham v. Brabham (In re Brabham),* 184 B.R. 476, 482 (Bankr.D.S.C.1995); *Ewing v. Ewing*

*(In re Ewing)*, 180 B.R. 443, 445 (Bankr. E.D.Va.1994). In this case, Plaintiffs have the burden to prove, by a preponderance of the evidence, that the award of attorney's fees to Ms. Baker's attorney falls within the category of alimony, maintenance, or support. *In re Brabham,* 184 B.R. at 482; *In re Ewing,* 180 B.R. at 445.

Courts have generally viewed § 523(a)(5) liberally, rather than imposing on that section the narrow construction that is traditionally applied to other discharge exceptions. *See, e.g., Robinson v. Robinson (In re Robinson),* 193 B.R. 367, 373 (Bankr.N.D.Ga.1996); *see also Vendegna v. Vendegna (In re Vendegna),* C/A No. 92–71590–B; Adv. Pro. 92–8183–B (Bankr. D.S.C.12/14/1992). In the case of *Taylor v. Foiles (In re Foiles),* 176 B.R. 420 (Bankr.E.D.Va.1994), *aff'd,* 174 B.R. 692 (E.D.Va.1994); *aff'd,* 62 F.3d 1414 (4th Cir.1995), Judge Tice agreed with the general view that "awards of attorney fees in divorce cases are usually held to be nondischargeable spousal support," but he also emphasized that such view does not preclude courts from considering various factors to determine whether the obligation in question falls under the category of support or alimony. *See, id.*

 In determining the "nature" of the subject obligation, courts usually consider "the intent of the divorce court to provide support." *In re Robinson,* 193

B.R. at 373. Because it is often a difficult task for the bankruptcy court to determine a family court's intent in including certain provisions in an order, courts usually look at other factors as guidance to determine the nature of the obligation. *See, e.g., In re Foiles,* 176 B.R. at 422 (citing *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 762–63 (3d Cir.1990)); *Anderson v. Anderson (In re Anderson),* C/A No. 96–79651–W; Adv. Pro. 97–80170–W, 1997 WL 33344287 (Bankr.D.S.C.12/9/1997). However, there is "no uniformly accepted calculus" employed by bankruptcy courts to determine the nature of various obligations; rather, a determination under § 523(a)(5) is a fact-intensive analysis which allows courts to use numerous factors on a case-by-case basis. *Catron v. Catron (In re Catron),* 164 B.R. 912, 918 (E.D.Va.1994); *aff'd,* 43 F.3d 1465 (4th Cir.1994); *see also Foiles v. Taylor (In re Foiles),* 174 B.R. 692, 694 (E.D.Va.1994); *aff'd* 62 F.3d 1414 (4th Cir.1995); *Anderson v. Anderson (In re Anderson),* C/A No. 96–79651–W; Adv. Pro. 97–80170–W, 1997 WL 33344287 (Bankr. D.S.C.12/9/1997) (footnote omitted) ("Each case under Section 523 is fact intensive and distinguishable from other cases. In discerning whether an obligation is in the nature of support[,] courts have utilized a litany of factors, and while one factor may be determinative in one case, it may be of no consequence in another.").[14] In *Catron*

---

14. Some courts have looked at the following factors in determining whether a debt is in the nature of support or maintenance or whether it falls within the category of property settlement which is analyzed pursuant to § 523(a)(15):

 (1) [W]hether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

 (2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

 (3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

 (4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

 (5) the placement of the obligation in the decree (obligations under the heading support indicate the obligation was for support);

*v. Catron (In re Catron)*, 164 B.R. 912 (E.D.Va.1994); *aff'd* 43 F.3d 1465 (4th Cir. 1994), the court adopted the test used by the court in *Kettner v. Kettner*, 1991 WL 549386 (E.D.Va.1991) and considered the following four factors in determining whether a debt was in the nature of support as to fall within the requirements of § 523(a)(5):

> The first factor to be considered is the actual substance and language of the agreement .... The second factor is the financial situation of the parties at the time of the agreement .... The third factor enumerated in *Kettner* is the function served by the obligation at the time of the agreement .... The final factor ... is whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse.

*In re Catron*, 164 B.R. at 919; *aff'd* 43 F.3d 1465 (4th Cir.1994).[15] In a later case, the bankruptcy court in Virginia analyzed the specific question of whether attorneys fees awarded during a divorce proceeding fell in the nature of support or alimony as to be deemed nondischargeable under § 523(a)(5), and, in so doing, it concluded that "the traditional bankruptcy factors

... relevant [in the case were]: (1) the relative financial position of the parties and (2) the function served by the obligation." *Taylor v. Foiles (In re Foiles)*, 176 B.R. 420 (Bankr.E.D.Va.1994), *aff'd*, 174 B.R. 692 (E.D.Va.1994); *aff'd*, 62 F.3d 1414 (4th Cir.1995) (citing *In re Catron*, 164 B.R. at 919); *see also Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 374–75 (Bankr.N.D.Ga.1996) ("[L]ike several courts before it, the Court shall employ a mixed approach, balancing both the apparent function of the award and the nature of the litigation in an attempt to discover the intent behind the award of fees.").

In considering the relative finances of the litigants in the present case, the Court finds that the parties did not "stand as financial equals at the time of the divorce." *See, e.g. In re Robinson*, 193 B.R. at 375; *see* also *Holliday v. Kline (In re Kline)*, 65 F.3d 749 (8th Cir.1995). Testimony at trial showed that, at the time of the divorce, Ms. Baker's yearly income was between $25,000 and $28,000.[16] On the other hand, as reflected in Debtor's Financial Declaration dated July 5, 1996; Debtor's net monthly income, including his salary from

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support);

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and

(10) waivers of maintenance.

*Morgan v. LeRoy (In re LeRoy)*, 251 B.R. 490, 502 (Bankr.N.D.Ill.2000); *see also Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R.

448, 451 (Bankr.S.D.N.Y.2000); *Anderson v. Anderson (In re Anderson)*, C/A No. 96–79651–W; Adv. Pro. 97–80170–W, 1997 WL 33344287 (Bankr.D.S.C.12/9/1997) (listing a "litany" of twenty-five factors that various courts have considered).

**15.** In restating its view that "there is no uniformly accepted calculus to make the determination of whether such debtors are dischargeable," the Fourth Circuit added in a footnote: "We should note that our approval of the *Kettner* factors is not an enactment of them and should not be construed as disapproval of the other formulae." *Id.* at 919 n. 9

**16.** No evidence was introduced at trial as to the nature of her employment both at the time of the divorce and the present time.

his business as well as pensions and retirement and disability, was \$4,173.51, amounting to a net yearly income of approximately \$50,076. The Court views the parties' financial disparity at the time of the divorce as strong indicia, in and of itself, that the intent of the Family Court was to treat the award to Ms. Baker of a portion of her attorney's fees as support.

The Court also relies on the Family Court's own consideration of the financial circumstances of the parties at the time of the divorce and conclusion that Defendant was in a better position to sustain such costs. In the Final Order entered on May 28, 1997, the Family Court stated as follows:

> The Court finds that Mr. Baker has a better ability to pay the legal fees incurred by Mrs. Baker in this case. The testimony is also clear that Mr. Baker is the chief cause of the extraordinary cost and fees in this case. For all of these reasons, the Court finds that Mr. Baker should be responsible for a large portion of the resulting legal fees incurred by Mrs. Baker.

> It is also quite clear that Plaintiff has little ability to pay legal fees and with the division of marital assets as stated above in paragraph eleven (11), Defendant has several equity bearing assets from which to obtain funds.

In the Order From Proceedings on Remand, the Family Court reconsidered the prior minimal award of attorney's fees to Ms. Baker and once again reevaluated Ms. Baker's financial situation, which lead to the conclusion that: "Plaintiff's current financial declarations demonstrate her inability to pay her own attorney's fees and the effect of such payment on her standard of living." Thus, the Court finds that the parties' financial circumstances at the time of the divorce as well as the Family Court's evaluation of the financial disparity in awarding a portion of attorney's fees to Ms. Baker strongly weigh in favor of finding that the award of the fees was in the nature of support.[17]

■ Furthermore, when considering "the function served by the obligation," the Court also finds that it weights in favor of characterizing the award of attorney's fees as being in the nature of support or maintenance. In considering this fact, courts have viewed "the nature of the underlying litigation [as] dominat[ing] the examination of a fee award's nature." *In re Robinson,* 193 B.R. at 374. In other words, "while litigation involving an attempt to obtain alimony or child support may give rise to a 'support-like' fee award, a court battle solely over property division or custody of a child may not." *Id.; see also Taylor v. Foiles (In re Foiles),* 176 B.R. 420 (Bankr. E.D.Va.1994), *aff'd,* 174 B.R. 692 (E.D.Va. 1994); *aff'd,* 62 F.3d 1414 (4th Cir.1995). In this case, the divorce litigation involved issues of alimony and maintenance for the

---

17. The Court also notes that further support for characterization of the award as maintenance or support is also found in S.C.Code Ann. § 20–3–130 (Law. Co-op.1976 and Supp. 1999), which must have been relied on by the Family Court in making its determination. *See, e.g. In re Robinson,* 193 B.R. at 375 (relying on O.C.G.A. § 19–6–2 in concluding that "[t]o the extent that the divorce court assessed attorney's fees against the defendant under the Georgia standard, that award consequently may be interpreted as an obligation of support for the purposes of 11 U.S.C. § 523(a)(5).'"). Section 20–3–130(H) provides:

> The court, from time to time after considering the financial resources and marital fault of both parties, may order one party to pay a reasonable amount to the other for attorney fees, expert fees, investigation fees, costs, and suit money incurred in maintaining an action for divorce from the bonds of matrimony, as well as in actions for separate maintenance and support . . . .

spouse as well as support for the couple's children. Even though the children were emancipated at the time of the divorce, the litigation involved issues concerning college education expenses, which concluded in the Family Court's finding that "[e]ach party should be responsible for one-half (1/2) of the daughters' expenses for college to include tuition and books, when such expenses exceed the amount covered by grants, loans, etc." The fact that the litigation also involved issues of marital property and debts does not alter the Court's determination that the award of attorney's fees to Ms. Baker was in the nature of support.

 Lastly, even though the label attached to an obligation is not controlling in the Court's determination of whether that debt is in the nature of support or maintenance, such factor is significant and may nonetheless be considered. *See, e.g., Catron v. Catron (In re Catron)*, 164 B.R. 912, 919 (E.D.Va.1994); *aff'd* 43 F.3d 1465 (4th Cir.1994); *Anderson v. Anderson (In re Anderson)*, C/A No. 96–79651–W; Adv. Pro. 97–80170–W, 1997 WL 33344287 (Bankr.D.S.C.12/9/1997). In this case, the language in the Order From Proceedings on Remand clearly states that the payments of the attorney's fees to Ms. Baker were awarded "as an incident of support." Thus, the order itself unequivocally indicates that the obligation is in the nature of support rather than property settlement.

Based on the foregoing, the Court concludes that the obligation that the Family Court imposed on Defendant to pay Ken H. Lester $15,000 of Ms. Baker's attorney's fees incurred during her divorce proceedings was in the nature of support. Furthermore, because it is of no consequence to the Court's decision that the debt was to be paid directly to the attorney, the Court concludes that the obligation to pay the portion of attorney's fees is nondischargeable in bankruptcy pursuant to § 523(a)(5).

## 2. Survivor Benefit Plan and Military Pension

Pursuant to the Final Order of the Family Court, Ms. Baker was awarded a portion of Defendant's military retirement pay, which was apportioned by taking into account how many months the parties were married during Defendant's active duty. Ms. Baker presently receives approximately $609.00 a month as her share of Defendant's military pension. The Final Order also ordered Defendant to maintain his participation in the SBP and to continue to designate Ms. Baker as the beneficiary, "with the amount of the monthly premium being paid directly to Plaintiff as alimony." Thus, the issue before the Court is whether both the portion of Defendant's pension plan awarded to Ms. Baker and the participation in the SBP are nondischargeable obligations pursuant to either §§ 523(a)(5) or (a)(15).[18]

 As to the nondischargeability of Ms. Baker's share of the military pension plan, the first critical question that the Court needs to address in deciding whether the obligation to pay Ms. Baker a portion of Defendant's military pension is a dischargeable property settlement is "whether the divorced spouse has obtained a property interest in the pension itself through the agreement or only a contingent claim against the debtor for the payment." Sommer & McGarity, *Collier Family Law and the Bankruptcy Code*, ¶ 6.05[8] (1999). If the divorce decree in

---

**18.** It is unclear to the Court whether the dischargeability of the payments related to Defendant's retirement plan and the SBP were even at issue in this case; however, this Court will side with caution and consider their dischargeability.

this case created a debt rather than a property interest in Ms. Baker's favor, then any award to her that was not deemed to be in the nature of alimony, support, or maintenance would most likely be dischargeable. *See, id.* ("If the spouse obtained an ownership interest in property, no debt existed to be discharged unless that interest can somehow be avoided in the bankruptcy case.").

Many courts have considered the question of whether a former spouse's entitlement to a portion of a military pension was to be viewed as a "debt", and have concluded that "[d]isposable military retirement benefits are not debts as defined by 11 U.S.C. § 101(12) of the Bankruptcy Code, but rather, constitute the sole and separate property of a debtor's former spouse where the spouse received an award of a portion of debtor's military retirement benefits pursuant to a divorce decree or other order of the court." *Williams v. Califf (In re Califf)*, 195 B.R. 499, 501 (Bankr.N.D.Ala.1996); *see also Lowenschuss v. Selnick (In re Lowenschuss)*, 170 F.3d 923, 930–31 (9th Cir. 1999) (holding that the family court's award to ex-wife of interest in 38.7% of debtor's military pension payable directly from the plan was not subject to discharge because interest in pension plan was not a debt; rather, it was considered ex-wife's separate ownership interest); *Walston v. Walston*, 190 B.R. 66, 69 (E.D.N.C.1995) ("[A]t least six jurisdictions have followed this rule in cases involving military pensions, holding that marital property interest in a debtor's military pension are not dischargeable in bankruptcy."); *McGraw v. McGraw (In re McGraw)*, 176 B.R. 149, 151 (Bankr.S.D.Ohio 1994) (concluding that "[w]hen the Domestic Relations court awarded a portion of [debtor's] pension to [his ex-wife], she became the equitable owner of 36½% of the pension fund and that percentage became her sole and sepa-

rate property"); *Potter v. Potter (In re Potter)*, 159 B.R. 672, 674 (Bankr.N.D.N.Y. 1993); *Newcomb v. Newcomb (In re Newcomb)*, 151 B.R. 287, 289–90 (Bankr. M.D.Fla.1993); *Sadowski v. Sadowski (In re Sadowski)*, 144 B.R. 566, 567 (Bankr. M.D.Ga.1992) ("Most courts have found that the former spouse's interest in the military pension became absolute upon the granting of the divorce and thereafter was the 'sole and separate property' of the former spouse."); *Vendegna v. Vendegna (In re Vendegna)*, C/A No. 92–71590–B; Adv. Pro. 92–8183–B (Bankr. D.S.C.12/14/1992).

In enacting the Uniformed Services Former Spouses Act ("USFSPA"), Congress proscribed the treatment that a former spouse of a retired military service member was afforded. 10 U.S.C. § 1048(c)(1). Pursuant to 10 U.S.C. § 1048(c)(1), state divorce courts are permitted to divide military pensions. The section provides in pertinent part: "A court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." Since the enactment of the USFSPA on September 9, 1982, "courts have consistently held that a 'plaintiff's interest in [a] debtor's military retirement pension is not subject to the debtor's bankruptcy proceeding." *In re Califf,* 195 B.R. at 501 (citing *Corrigan v. Corrigan (In re Corrigan)*, 93 B.R. 81 (Bankr. E.D.Va.1988)).

In the case of *Chandler v. Chandler (In re Chandler)*, 805 F.2d 555 (5th Cir.1986), for example, a Chapter 7 debtor sought the determination of the dischargeability of a debt, involving the obligation to pay a portion of an army retirement benefit awarded to his ex-wife pursuant to the divorce proceedings. The divorce decree,

which awarded $450.00 a month to the ex-wife as her share of the army retirement plan, specified that the money was her "sole and separate property." The Court noted that pursuant to the Uniformed Services Former Spouse's Protection Act of 1982, "a court may divide military retirement pay between spouses in accordance with the law in that court's jurisdiction" and concluded: "We are persuaded that [the ex-wife's] position in her original complaint, that the $450.00 monthly payments are her sole property and not simply an obligation of Mr. Chalder's, is correct." *Id.* at 557.

Similarly in the case presently before the Court, the Family Court ordered Debtor to pay Ms. Baker 29.615% of his monthly disposable military retired pay. The Family Court also specified that Ms. Baker was to receive the portion of Defendant's military retired pay directly from DFSA or its successor. The obligation to make such payments lies solely with the DFSA, as directed by the Family Court in their Final Order; thus, Debtor no longer has any rights or interest in the portion of the pension which was awarded to Ms. Baker. Furthermore, the Family Court's Final Order provides that "[t]he Plaintiff is awarded a portion of the military retired pay attributable to the Defendant's military service *as her sole and separate property and the Defendant is divested of all title and interest in and to her portion military retired pay.*" (Emphasis added). Because of the express language in the order of the Family Court as well as the

fact that in this case the payments are being paid directly by the DFSA, the Court finds that Ms. Baker has an ownership interest in the portion of Defendant's military pay that was awarded to her pursuant to the divorce decree, and no debt exists for future payments by Debtor to be discharged through bankruptcy.[19]

At trial, the litigants also raised issues concerning the SBP and Debtor's obligation to participate in the SBP for his ex-wife's benefit. It is unclear to the Court whether the SBP was raised as an issue for purposes of seeking its nondischargeability. The issue that was highly contested at trial regarding this benefit plan dealt with Debtor's obligation to pay $150.00 toward the plan for his ex-wife's benefit and whether the money was actually being paid from Debtor's retirement or whether it was being subtracted from Ms. Baker's share of Defendant's military pension. Furthermore, Ms. Baker also alleged at trial that, despite the Family Court's order that Defendant designate Ms. Baker as the "sole and permanent beneficiary" of the plan, Defendant had substituted his new wife as the beneficiary of the SBP. This Court refrains from issuing any order on those particular issues, which should be raised in the Family Court that issued the divorce decree. As to the issue of the nondischargeability of the obligation to remit payments to the SBP for the ex-wife's benefit, the Court finds that, as discussed in relation to the military pension plan, Ms. Baker has obtained a property inter-

---

**19.** This Court recognizes that some jurisdictions, including this District, have raised the concern of ERISA's strict anti-alienation rules, which preclude an ex-spouse from having a property interest in a pension plan, in dealing with the issue of dischargeability of awards of a portion of pension plans. *Gendreau v. Gendreau (In re Gendreau),* 122 F.3d 815, 817–18 (9th Cir.1997); *Bush v. Taylor,* 912 F.2d 989, 993–94 (8th Cir.1990); *Vendeg-*

*na v. Vendegna (In re Vendegna),* C/A 92–71590–B; Adv. Pro. 92–8183–B (Bankr. D.S.C.12/14/1992). ERISA was "promulgated to protect participants in private employee benefit plans." *In re Gendreau,* 122 F.3d at 817. Because Defendant has not raised the anti-alienation issue and because the pension plan in this case is not private but rather a military pension plan, the Court will not address this issue.

est in the SBP; thus, no debt exists to be discharged.

### 3. Credit Card and Credit Line Debts

Lastly, Ms. Baker seeks the nondischargeability of various joint debts which were assumed by Defendant pursuant to the divorce decree. More specifically, Ms. Baker seeks the nondischargeability of the following debts with the respective balances:[20]

| | |
|---|---|
| American Express Gold | $13,836.00 |
| Bank of America Visa | $ 3,957.00 |
| Discover (2)* [21] | $ 2,246.34 |
| Pentagon FCU Creditline | $17,080.49 |
| Pentagon FCU Visa* | $ 2,918.18 |
| NationsCredit | $ 4,568.00 |
| Rhodes Furniture | $ 4,505.00 |
| Sears (2)* | $ 3,793.35 |
| Universal Medical Associates | $ 312.00 |
| Chase Master Card | $ 2,141.00 |
| TOTAL | $55,357.36 |

As to the debt owed to Universal Medical Associates, in the amount of $312.00, Ms. Baker testified at trial that she had no knowledge of this debt but requested that it be held by the Court as nondischargeable because it was listed on Debtor's Schedule F as having a co-debtor. No other evidence was introduced by either party as to this obligation. The Court is reluctant to consider the nondischargeability of a debt for the sole reason that it was listed on Schedule F as having a co-debtor, especially given the fact that Debtor remarried since the divorce, which raises a possibility that the co-debtor on the debt is his new spouse. Due to the lack of information on this obligation, the Court finds that the debt to Universal Medical Associ-

ates is not presently subject to a determination of dischargeability.

As to the debt to Chase MasterCard in the amount of $2,141.00, the Court finds that Ms. Baker did not raise the nondischargeability of that debt in the Complaint filed on March 3, 2000 and further failed to amend the Complaint after that date to include it upon realizing that, despite the fact that the debt was not a joint marital debt, it was being reported on her personal credit history. At trial, Ms. Baker introduced a copy of her credit information dated October 12, 1999, which reflects the Chase MasterCard as a "bad debt," at which point Defendant's attorney objected on the grounds that the issue was untimely because it was not raised in the Complaint. Fed.R.Civ.P. 15(b), made applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 7015 allows the amendment of pleadings to conform to the proof presented in certain situations. *See, e.g. McDow v. McCreight (In re McCreight)*, C/A No. 98–05720–B; Adv. Pro. 98–80250–B (Bankr. D.S.C.7/22/1999). More specifically, the rule provides in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.... If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings

20. The balances shown were the latest figures presented to the Court, as reflected in Debtor's Schedule F; thus, it dates back to the filing of the petition. However, as for the balances for the Discover, Pentagon FCU Visa, and Sears credit cards, they reflect the difference between the balance as of the date of the petition date and the date of the divorce decree, which is the balance that Ms. Baker claims should be nondischargeable. No figures were presented to the Court as to the balance owed on the credit cards and credit lines as of the date of the trial. This Court notes that both parties and their respective counsel did a poor job at trial of presenting exact dollar amounts at issue in this case.

21. The asterisked amounts represent the difference between the balance owed on the credit cards as of the date of the trial and the balance owed as of the date of the divorce, as reflected in the exhibits attached to the Final Order of the Family Court.

to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to maintaining the party's action or defense upon the merits.

In this case, Ms. Baker never formally moved to amend the pleadings pursuant to Fed. R. Bankr.P. 7015; rather, she argued that the debt owed to Chase MasterCard should be deemed nondischargeable for the same reasons as applied to the other debts properly plead. Even if Ms. Baker had correctly followed bankruptcy procedures in requesting that the original Complaint be amended to conform with the evidence, the Court finds that such amendment, so late in the proceedings, would have prejudiced Defendant who apparently had no notice of Ms. Baker's claim until that point.[22] Thus, the Court finds that the debt to Chase MasterCard is not presently subject to its dischargeability determination.

As for the rest of the debts at issue in this case, the Court finds that they do not fit within the requirements of § 523(a)(5) because the division of the credit card debt obligations were intended as a property settlement rather than as a means of support or maintenance to Ms. Baker. Therefore, the Court analyzes the nondischargeability of those debts under § 523(a)(15).

▮▮▮▮ In order to except a debt from discharge pursuant to § 523(a)(15), Ms. Baker must first establish that "she holds a claim against the Debtor, other than the kind described in § 523(a)(5), that was

awarded by a court in the course of a divorce proceeding or separation." *Morgan v. LeRoy (In re LeRoy)*, 251 B.R. 490, 504 (Bankr.N.D.Ill.2000); *Waits v. Kyzer (In re Kyzer)*, C/A No. 99–06445–W; Adv. Pro. 99–80375–W (Bankr.D.S.C.5/24/2000) (citing *Strong v. Strong (In re Strong)*, C/A No. 94–75489–W; Adv. Pro. 95–8100–W, 1995 WL 1930451 (Bankr. D.S.C.11/13/1995)). There is no dispute among the parties that this requirement has been met for the debts at issue in this case; with the exception of the debts owed to Discover, Pentagon FCU Visa, and Sears. As for those debts, Ms. Baker claims that despite the fact that, pursuant to the divorce decree she assumed the balances owed on those credit card debts, the balances incurred on the cards following the divorce should be deemed nondischargeable.[23]

Pursuant to the Final Order of the Court, the debts owed to those three creditors, with the respective balances of $2,477.66, $3,059.69, and $4,312.65 as of the date of the divorce, were to be assumed by Ms. Baker. However, the Family Court had specified in the Final Order and Amended Final Order that "[a]ny additional debt incurred after the date reflected [on the exhibits] should be the sole responsibility of the party incurring that debt." Therefore, Ms. Baker argues that the following amounts, representing the difference between the balance as of the date of the trial and the balance as reflected in the exhibits attached to the Final Order of the Family Court, should be deemed nondischargeable: (1) Discover—$2,246.34; (2)

---

**22.** Furthermore, the Court notes that Ms. Baker knew or should have known that the credit card debt to Chase MasterCard was being reported on her credit history as of at least that date. Her failure to include it in the Complaint or to properly amend the Complaint to raise its nondischargeability is not justified.

**23.** At trial, Ms. Baker testified that she made no charges to those cards following the divorce. As to the Sears credit card, she testified that Defendant had applied for it after the separation; thus, she never had access to it. As to the other two credit cards, she testified that they were intended for Defendant's sole use.

Pentagon FCU Visa—$2,918.18; and (3) Sears—$3,793.35.

The issue for the Court is whether the balances of the Discover, Pentagon FCU Visa, and Sears credit cards, incurred by Debtor following the entry of the divorce decree, is a debt owed within the meaning of the statute. Section 523(a)(15) applies to debts which are "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." *See, e.g. Burton v. Burton*, 242 B.R. 674, 678 (Bankr.W.D.Mo.1999) (citation omitted) ("[T]hat phrase has been interpreted as requiring the creation of a debt in the course of a divorce or separation that was not in existence before the divorce. A hold harmless or indemnification agreement in this divorce decree will usually meet this requirement."). Some courts have concluded that debts solely incurred by Debtor after the divorce may still fall within the meaning of § 523(a)(15) despite the absence of "hold harmless" language. *See, e.g. Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr. W.D.Ark.1996); *King v. Speaks (In re Speaks)*, 193 B.R. 436, 441 (Bankr.E.D.Va. 1995).

In *In re Schmitt*, the parties' divorce decree apportioned a large amount of credit card debt and provided that "[e]ach party will pay any debt incurred by said party subsequent to separation." A formal "hold harmless" provision was not included in any of the divorce documents. Mr. Schmitt did not cancel any joint credit card following the divorce, and Debtor continued to charge expenses to them, until the filing of the bankruptcy petition. As a result of the bankruptcy, Mr. Schmitt filed a complaint alleging that the debts should be nondischargeable pursuant to § 523(a)(15). In determining whether the debts at issue were incurred in the course of a divorce or other order of a court of record, thus meeting the requirements of § 523(a)(15), the court acknowledged that "[a]lthough there is no 'hold harmless' language in the decree or complaint, the parties, in fact, promised [to] pay [sic] their own debts incurred *after* the divorce." *Id.* at 315. In ultimately concluding that the debtor in that case had incurred a debt in connection with the divorce within the meaning of section 523(a)(15), the court noted:

> [T]he debtor had a duty, agreed upon by her in the divorce, as well as a duty imposed by court order, to pay the particular marital debts and the debts she alone incurred in the future on those joint credit cards. Under this doctrine, the debt is required to be paid by her rather than by [Mr. Schmitt] because both parties agreed to the division of debt.... While it was foolish to remain as a co-debtor on the credit cards, such is not wrongful conduct so as to obviate the protection of the doctrine of indemnification. It is clear from the context and the documents that the parties agreed to, and were ordered to, bear their apportioned debts and hold the other harmless from payment.

*Id.* at 316.

 In the present case, while there is no express "hold harmless" agreement or any specific language whereby the parties agreed not to incur any further debt on the join credit cards, there was a clear understanding that the parties would be solely responsible for their own debts incurred on the credit cards. In fact, the Final Order and Amended Final Order specified that "[a]ny additional debt incurred after the date reflected [on the exhibits] should be the sole responsibility of the party incurring that debt." As held by the court in *King v. Speaks (In re Speaks)*, 193 B.R. 436 (Bankr.E.D.Va.

1995), "even in the absence of an explicit agreement, the law will imply an obligation to indemnify where one party incurs a debt for his own benefit which creates liability on the part of another.". Accordingly, this Court concludes that even the debts incurred on the Sears, Pentagon FCU Visa, and Discover cards were debts incurred in connection with a divorce, thus meeting the first requirement of § 523(a)(15). Therefore, including these debts, the total balance of the credit card and credit line debts at issue before the Court totals $52,904.36.

■ Once the initial burden to prove that the debts in question come within the meaning of the statute is met, the burden of proof then "shifts to the defendant to prove that he does not have the ability to pay the debt in question from income or property not reasonably necessary for his or his dependents' maintenance and support or to prove that the discharge of said debt would result in a benefit to him or her that would outweigh the detriment to the former spouse." *Waits v. Kyzer (In re Kyzer)*, C/A No. 99–06445–W; Adv. Pro. 99–80375–W (Bankr.D.S.C.5/24/2000) (citing *Strong v. Strong (In re Strong)*, C/A No. 94–75489–W; Adv. Pro. 95–8100–W, 1995 WL 1930451 (Bankr. D.S.C.11/13/1995)). Because subsections (A) and (B) of § 523(a)(15) are written in the disjunctive, "[t]he Debtor must meet the showing required on only one of the two prongs of § 523(a)(15) to prevent the debt from being excepted from discharge." *Morgan v. LeRoy (In re LeRoy)*, 251 B.R. 490, 504 (Bankr.N.D.Ill.2000); *see also Waits v. Kyzer (In re Kyzer)*, C/A No. 99–06445–W; Adv. Pro. 99–80375–W (Bankr. D.S.C.5/24/2000). In other words:

> If the debtor is found to lack the ability to repay the debt, the inquiry ends at § 523(a)(15)(A) and the debt is deemed dischargeable. If, however, the debtor

is found to have the ability to repay the debt, the inquiry proceeds to § 523(a)(15)(B) to consider the non-debtor spouse's ability to pay the debt.

*In re LeRoy*, 251 B.R. at 505 (citations omitted).

■ When considering subsection (A), the Court must apply an "ability to pay" test which is the equivalent of the "disposable income" test applied in Chapter 13 confirmation pursuant to § 1325(b)(2). *Oswald v. Asbill (In re Asbill)*, 236 B.R. 192, 196 (Bankr.D.S.C.1999); *Campbell v. Campbell (In re Campbell)*, 198 B.R. 467, 473 (Bankr.D.S.C.1996); *Waits v. Kyzer (In re Kyzer)*, C/A No. 99–06445–W; Adv. Pro. 99–80375–W (Bankr.D.S.C.5/24/2000). As this Court has emphasized previously in *In re Campbell*: " '[R]ather than engaging in hopeless speculation about the future,' a court should determine projected disposable income by calculating a debtor's 'present monthly income and expenditures' and extending those amounts over the life of the plan.' " *In re Campbell*, 198 B.R. at 473 (quoting *In re Solomon*, 67 F.3d 1128 (4th Cir.1995)).

There is a split of decisions as to whether, pursuant to § 523(a)(15) a debt may be partially discharged. Some jurisdictions have held that "under § 523(a)(15) a debt may be partially discharged according to the facts of the particular case, just as with determinations of dischargeability of student loan debts under § 523(a)(8)." *Melton v. Melton (In re Melton)*, 228 B.R. 641, 646 (Bankr.N.D.Ohio 1998); *see also Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177, 186 (Bankr.D.Me.1999) (holding that § 523(a)(15) "is not an all-or-nothing proposition"); *Gagne v. Gagne*, 244 B.R. 544, 548 (Bankr.D.N.H.1998) (concluding that, "taking the somewhat 'equitable middle ground,' " at least one of the three debts was nondischargeable because debtor had the ability to pay the balance on that one

obligation); *Newcomb v. Miley (In re Miley)*, 228 B.R. 651, 656–57 (Bankr.N.D.Ohio 1998); *Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190–91 (Bankr.N.D.Ohio 1998); *In re Campbell,* 198 B.R. at 474 ("While [ ]a partial discharge may be appropriate under some circumstances, the Court does not believe such is appropriate in this case and finds that the Debtor has failed to show by the preponderance of the evidence, that he lacks the ability to repay these debts."); *McGinnis v. McGinnis (In re McGinnis)*, 194 B.R. 917 (Bankr. N.D.Ala.1996); *Comisky v. Comisky (In re Comisky)*, 183 B.R. 883 (Bankr.N.D.Cal. 1995); *cf. Greenwalt v. Greenwalt (In re Greenwalt)*, 200 B.R. 909 (Bankr. W.D.Wash.1996) ("This [c]ourt ... concludes that a partial discharge is justified by § 523(a)(15), but not by analogy to § 523(a)(8). Section 523(a)(15) itself speaks to the dischargeability of 'such debt,' suggesting that the court may review each liability separately.").

Other courts, however, have disagreed. *See, e.g., Smith v. Smith (In re Smith)*, 218 B.R. 254, 260 n. 2 (Bankr.D.Ga.1997) (distinguishing partial dischargeability in § 523(a)(15) from § 523(a)(8) in that "[a]limony and support are inherently the domain of the state and state court processes are entitled to great deference; thus bankruptcy court should limit its role in domestic relations matters to the narrowest role possible under the statute."); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 766 (Bankr.N.D.Ill.1996); *aff'd* 199 B.R. 37 (N.D.Ill.1996) ("The statute makes no provisions for determining that a part of a debt may be found dischargeable, but the remainder nondischargeable. Thus, the Court declines to follow the *Comisky* approach and attempt to forge an equitable middle ground in this matter."); *Collins v. Florez (In re Florez)*, 191 B.R. 112 (Bankr. N.D.Ill.1995) ("This Court is not persuaded that an undue hardship analysis belongs within the bounds of Section 523(a)(15)."); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648, 650 (Bankr.W.D.Mo.1995).

■ This Court refuses to take the "all-or-nothing" approach because it appears to be contrary to the reasonable statutory interpretation and purpose of § 523(a)(15). Thus, it is inclined to follow the more liberal view on the issue to conclude that partial discharge in cases dealing with § 523(a)(15) is an "equitable and pragmatic" practice which does not allow the debtor a windfall if he or she is unable to pay the total balance of the debt, yet has sufficient resources to partially meet the obligation. *See, e.g., Perkins v. Perkins (In re Perkins)*, 221 B.R. 186, 190 (Bankr.N.D.Ohio 1998).

In this case, the evidence presented at trial reflects that Defendant and his new spouse's present monthly income is approximately $4,524.00. This figure includes the income from Defendant's business, which, following the divorce from Ms. Baker, has proven to be unprofitable. In fact, the Defendant's business, which specializes in truck drivers recruiting services, presently nets a monthly loss of approximately $376.00. Without considering the income from the business, their combined monthly income would average approximately $3,030.00. Debtor's Schedule J, in turn, reflects monthly expenses between him and his new wife of $5,330.35. Despite the fact that a first look at their income and expenses seems to indicate that there is no excess income to contribute toward the credit card and credit line obligations; after hearing the testimony at trial and considering the evidence presented, the Court finds that some of Debtor's expenses are unreasonable and concludes that a partial repayment of the credit card and credit line debts at issue in this case is warranted.

As to Defendant's income, the Court finds that he is underemployed. Defendant testified at trial that he presently receives $1,573.19 in disability and military retirement pay a month. That amount already accounts for the deduction in the military pension of Ms. Baker's portion, as awarded pursuant to the divorce decree. Defendant also testified that he is presently self-employed and operates a drivers-recruiting business which he owned even prior to the divorce. The Financial Declaration dated July 5, 1996 that Defendant filed with the Family Court pursuant to the divorce proceedings shows that the business was profitable prior to the divorce and that Defendant's monthly salary was $2,769.24; however, following the divorce, the business became unprofitable and averages monthly losses. At trial, Defendant testified that he presently earns no money from the business and relies on his military pension and disability pay as income. Even though he testified that subsequent to the divorce he has had some medical problems, there was no indication to the Court that he is presently unable to attain any employment or that his medical conditions prohibit him from working.[24]

The Court finds it skeptical that both Defendant and his new spouse's income have substantially decreased subsequent to the divorce. Furthermore, when considering that prior to the divorce Defendant's business was averaging monthly income of over $2,500, the Court finds that he is presently voluntarily underemployed. Courts usually consider the debtor's underemployment in making the determination of whether to discharge certain debts and have held that "[w]here a debtor is unemployed or underemployed, the court will look to whether this condition is intentional or negligent or beyond debtor's control, and impute income according to the debtor's earning capacity if appropriate." *Greenwalt v. Greenwalt (In re Greenwalt),* 200 B.R. 909, 913 n. 4 (Bankr.W.D.Wash. 1996); *see also Oswald v. Asbill (In re Asbill),* 236 B.R. 192 (Bankr.D.S.C.1999). When taking into account his income history and his military pension and disability income, the Court believes that Debtor should be imputed an income between $2,000 and $2,500 a month, compared to the $1,573.19 monthly income he presently relies on from his military retirement and disability benefits. Thus, when considering Defendant's earning capacity, the Court finds that a reasonable income to impute to him and his new spouse should be at least between $3,500 and $4,000 a month.

As to Defendant and his spouse's monthly living expenses, the Court concludes that some are overstated or not reasonably necessary for their support. First of all, the Court finds that Defendant should exclude from his budget the $1,876.00 which he claims as a regular expense from operation of business. The Court believes that it is unreasonable for Defendant to continue operating a business which nets an average loss of over $350.00 a month. Second, Defendant and his spouse live in a home, titled in the spouse's name, and their mortgage payments, combined with their utilities, are approximately $1,300. Prior to the bankruptcy, Debtor and the new spouse jointly owned the home; however, after Debtor filed for Chapter 7, he sold his one half interest in the home to his spouse. Debt-

---

**24.** The evidence presented to the court shows that Defendant was receiving disability pay even while profitably operating and managing the truck-driver recruiting services business; thus, such evidence indicates that Defendant has the ability to attain a job and earn income despite a determination of disability.

or's Schedule A reflects that the current market value of the house is $105,000, while the amount of secured claim is of $113,811.00.[25] The Court thus finds that the combined costs for the current mortgage payments and utilities bills are excessive, especially when taking into consideration the fact that Defendant has filed for relief under Chapter 7 and that Defendant and his new spouse have no other dependants.

When reducing Defendant and his new wife's house expenses, including utilities, to a more reasonable figure;[26] deducting for the operating expenses of the unprofitable business; subtracting from the monthly expenses the $609.48 that is paid to Ms. Baker as her portion of the military pension, given the fact that that amount was properly credited as a deduction in Defendant's income; and reducing the health insurance expenses, due to the fact that Debtor testified that he is no longer paying for health insurance in the amount of $300.00 but that he is presently incurring monthly medical expenses of $200.00; the Court finds that, from the evidence presented at trial, Defendant and his spouse's monthly expenses should be in the range of $3,000.

When taking all those factors into consideration, the Court finds that it is reasonable to discharge only a portion of Defendant's obligations at issue. However, "before proceeding to a partial repay-

ment analysis, this Court should first determine whether the Defendant can have the debt discharged in full under § 523(a)(15)(B)." *Melton v. Melton (In re Melton),* 228 B.R. 641, 646 (Bankr. N.D.Ohio 1998). In analyzing whether Debtor has met the requirements of § 523(a)(15)(B), the Court does not "adopt[ ] a *per se* rule under which the party with the higher income or standard of living loses under § 523(a)(15)(B)[; rather,] the Court must weight the needs of the parties and balance the equities under the specific facts of each case." *Oswald v. Asbill (In re Asbill),* C/A 98–05819–W; Adv. Pro. 98–80194–W (Bankr. D.S.C.5/16/1999). In so doing, the Court takes into consideration various factors such as: "(1) the income and expenses of both parties; (2) the nature of the debt; (3) the former spouses' ability to pay; (4) the number of dependents; and (5) the reaffirmation of any debts." *Morgan v. LeRoy (In re LeRoy),* 251 B.R. 490, 505 (Bankr.N.D.Ill.2000). In this case, Mr. Baker did not show sufficient evidence to prove that the benefit to him in discharging such debts would outweigh the detriment that would result to Ms. Baker. *See, e.g. Strong v. Strong (In re Strong),* C/A No. 94–75489–W, 1995 WL 1930451 (Bankr.D.S.C.11/13/1995). Furthermore, there was no showing to the Court by either party of Ms. Baker's financial situation.

25. No clear evidence was presented to the Court as to the value of the home, and the Court notes that there are discrepancies in the documents in the file as to the value of the house. Whereas the Schedules list the value at approximately $105,000, the Notice and Application for Sale by the Chapter 7 Trustee states that the subject property has been appraised at $152,000. Furthermore, the fact that the Chapter 7 Trustee sold Debtor's interest in the home for $7,000 further suggests that his new spouse has equity in the home. Such equity is considered by the Court in making its determination of the dischargeability of the debts at issue.

26. The Court acknowledges the fact that the mortgage debt was reaffirmed by the Amendment to Reaffirmation Agreement filed with the Court on February 18, 2000; however, the fact that the debt to Associates Home Equity Service, Inc. was reaffirmed does not alter the finding that the monthly mortgage payments constitute an unreasonable expense in this case.

When imputing income to Defendant between $2,000 and $2,500, thus resulting in a combined monthly income with his new wife ranging between $3,500 and $4,000, while considering reasonable expenses in the range of $3,000 a month; the Court finds that Debtor should have the ability to pay at least $500.00 of disposable income toward his credit card and credit line debts. Therefore, a partial discharge is appropriate in this case. When considering the totality of circumstances in this case, including the fact that Defendant is discharging approximately $24,000 worth of other credit card debts through bankruptcy and $18,500 of attorney's fees, owed for his divorce proceedings; the Court finds that, of the $52,904.36 of the credit card and credit line debts presently at issue before the Court, $42,000 worth of debts are nondischargeable by Defendant.[27] The Court finds that the parties or the Family Court are in a better position to decide how the payments and interest should be structured; thus, the Court leaves it to the parties to negotiate the amounts and duration of the monthly payments or, if an agreement cannot be reached, to take the dispute to Family Court for further litigation.

## CONCLUSION

From the foregoing arguments, it is therefore

ORDERED that Earl Solomon Baker's obligation to pay Ken H. Lester, Esquire the amount of $15,000, representing a portion of attorney's fees incurred by Ms. Baker during the divorce proceedings, is nondischargeable pursuant to § 523(a)(5).

IT IS FURTHER ORDERED that the portion of Earl Solomon Baker's military retirement pay awarded to Ms. Baker and the participation in the Survival Benefit Plan are not dischargeable because Ms. Baker obtained an ownership interest in those retirement and benefit plans, thus no debt exists to be discharged.

IT IS FURTHER ORDERED that a partial discharge of the credit card and credit line debts assumed by Earl Solomon Baker pursuant to the divorce decree is appropriate in this case. Thus, the Court finds that, of the $52,904.36 of the credit card and credit line debts presently at issue before the Court, $42,000 worth of debts are nondischargeable by Defendant.

**AND IT IS SO ORDERED.**

---

**27.** In reaching this decision, the Court has also considered the fact that Defendant is obligated, pursuant to this Order, to pay $15,000 of his ex-wife's attorney's fees to Ken H. Lester, Esquire. Taking that obligation into account as well as the $42,000 worth of credit card and credit line debts deemed nondischargeable; the Court notes that by remitting at least $500.00 of disposable income a month toward those obligations, Defendant could pay off the debts approximately within a ten (10) year term.